UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GALLIT FISCHMAN, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | DOCKET NO: 1:26-cv-11504 |
| BOSTON CHILDREN'S HOSPITAL, | ) ) | |
| Defendant | ) ) ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S</u>
## <u>MOTION TO DISMISS TO COMPLAINT</u>

Defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital ("BCH") respectfully moves pursuant to Fed. R. Civ. P. 12 that this Honorable Court <u>*allow*</u> its motion and enter an Order <u>*dismissing*</u> Plaintiff's negligence and wrongful death claims on the grounds that:

(1) Plaintiff's decedent was not a patient of and received no medical care at BCH;

(2) the decedent was not enrolled in any BCH clinical study;

(3) the decedent had no relationship whatsoever with BCH; and

(4) BCH made no representations, directly or indirectly, to the decedent or his healthcare providers regarding his care.

As a result, BCH did not owe the decedent any duty of care, did not breach any duty to the decedent, and did not cause any harm to the decedent. As further grounds therefore, BCH states as follow, based on the allegations set forth in the Complaint:

**Facts**

1.    On March 30, 2026, Plaintiff filed the present action against BCH.  See Plaintiff's Complaint ("the Complaint"), attached as Exhibit "A."

2.    Plaintiff's father, Dov Fischman ("the Decedent") received medical care at the University of Texas Southwestern Medical Center ("UTSWMC"), approximately nine years after he had received a heart transplant.  Complaint, ¶ 4.

3.    Plaintiff alleges that as part of the Decedent's care, a physician at UTSWMC recommended that he take an immunosuppressive drug, everolimus manufactured by Par Pharmaceuticals, which the Decedent did.  Complaint, ¶ 3.

4.    The Decedent died in January 2025.  Complaint, ¶ 3.

5.    Plaintiff does not allege any relationship between the Decedent and BCH.

6.    First, the Decedent was not a patient of and did not receive any medical care at BCH, a Charitable pediatric hospital based in Boston.  No doctor-patient relationship existed and is, in fact, expressly denied in the Complaint.  Complaint, ¶¶ 4, 47 ("BCH did not treat [the Decedent], did not prescribe to him, and had no clinical relationship with him").

7.    Second, the Decedent was not enrolled and did not participate in any research study at BCH.  BCH was one of twenty-five sites participating in a multi-state pediatric transplant study ("the Clinical Trial").[1] Everolimus and Low-Dose Tacrolimus After Heart Transplant in Children: A Randomized Clinical Trial - PMC.  The Clinical Trial involved a drug produced by Novartis

---

[1]    BCH served as the Data Coordinating Center and Statistical Principal Investigator in the multi-center study.  Plaintiff relies on a letter purportedly written by UTSWMC to the Texas Attorney General as establishing that BCH had "primary regulatory oversight" of the trial. Complaint, ¶ 2.  Though BCH strongly disputes that UTSWMC's letter is evidence of or establishes any such oversight, or imposes any duty owed by BCH to the Decedent, this fact is not material to BCH's motion to dismiss.

Pharmaceuticals, and not the everolimus drug produced by Par Pharmaceuticals which was allegedly prescribed to the Decedent.[2]  Complaint, ¶ 1.

8.      The Clinical Trial was an investigational study.   Participants had to meet qualification criteria and were required to sign detail written consent forms in order to enroll and participate in the study.  See Everolimus and Low-Dose Tacrolimus After Heart Transplant in Children: A Randomized Clinical Trial - PMC.

9.      The objective of the Clinical Trial was to evaluate the safety and efficacy of everolimus manufactured by Novartis combined with low-dose tacrolimus to prevent major adverse transplant events in children six months after heart transplant.  Id.; Complaint, ¶ 1.

10.      The Clinical Trial was funded and overseen by the United States of America Department of Defense, U.S. Army Medical Research Acquisition Activity ("USAMRMC").[3] Complaint, ¶ 21; Study Details | NCT03386539 | Tacrolimus/Everolimus vs. Tacrolimus/MMF in Pediatric Heart Transplant Recipients Using the MATE Score | ClinicalTrials.gov.

11.      The Decedent was not enrolled in the Clinical Trial at BCH, at UTSWMC, or anywhere else.[4]  Complaint, ¶¶ 3, 38.

---

[2]      The drug allegedly taken by the Decedent, and the drug involved in the Clinical Study, are different.  Importantly, drug companies may add ingredients or processes resulting in a different finished drug product which may vary in, among other things, bioequivalence.  While this distinction is crucial, it is not material to the present motion as the Decedent was not enrolled in the Clinical Trial.  See, e.g., DailyMed - Search Results for Everolimus.

[3]      BCH specifically raises herein government contractor and/or immunity defenses to Plaintiff's claims.

[4]      The Decedent would not have met criteria necessary to participate in the study.  Complaint, ¶ 1; Everolimus and Low-Dose Tacrolimus After Heart Transplant in Children: A Randomized Clinical Trial - PMC.

12.     Plaintiff resides, the Decedent resided, and the Decedent received his medical care in Texas.  Complaint, ¶ 4.

13.     Plaintiff brings this action "individually and as a statutory beneficiary of Dov Fischman, her father."[5]  Complaint, ¶ 4.

### Summary of the Argument

Plaintiff's Complaint is wholly devoid of facts establishing any relationship between BCH and the Decedent, or any duty owed by BCH to the Decedent.  The Decedent, a man in his seventies who was nine years post-heart transplant, was not treated by BCH or enrolled in BCH's pediatric study.  He simply had no relationship with BCH.  Moreover, the Decedent was purportedly treated by a physician at UTSWMC with a formulation of everolimus manufactured by Par Pharmaceuticals, which was not prescribed as part of nor had any connection to the Clinical Study.  Complaint, ¶¶ 3, 21, 37.  Plaintiff's Complaint alleges, in essence, that that because UTSWMC was a site in the government-funded Clinical Study, BCH should be responsible for the independent medical decisions of all UTSWMC physicians who prescribed an everolimus medication, regardless of whether the drug was made by the same manufacturer or the patient was enrolled in the Clinical Study.  As set forth below, there is no legal theory or authority pursuant to which BCH, a Charitable organization subject to the provisions of M.G.L. c. 231, § 85k, could be found liable on the facts alleged.

---

[5]     Plaintiff sues in her individual capacity and alleges no facts establishing her standing to sue for wrongful death on behalf of the Decedent's beneficiaries.  BCH reserves the right to timely raise Plaintiff's lack of standing to bring her asserted claims should the Court deny this Motion.

**Argument**

**Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  The complaint must advance "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).  The Court need not accept Plaintiff's assertion that a factual allegation satisfies an element of a claim, nor must the Court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion.  *Cordero-Hernández v. Hernández-Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2006).  In addition, it is proper in deciding a Rule 12(b)(6) motion to take judicial notice of matters of public record.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2008).  The question of whether a duty of care exists is a question of law, and thus the proper subject of a motion to dismiss.  *Silvia v. Kohl's Inc., et al.*, 2026 WL 1552147 (D. Mass. 2026).  As set forth below, Plaintiff has not alleged facts establishing that BCH owed the Decedent any duty of care, that BCH breached any such duty, or that any such breach caused the Decedent harm, and her claims must be dismissed.[6]

---

[6]    Plaintiff asserts negligence claims under Massachusetts law, and a wrongful death claim under Texas law.  Plaintiff's negligence claims fail under both MA and TX law, as BCH owed no duty to the Decedent.  As a result, Plaintiff's wrongful death claim also fails, rendering a determination as to which state's law applies moot. However, BCH reserves the right to raise choice of law arguments should the Court deny this Motion and as facts develop. *Ricci v. Delta Air Lines, Inc.*, 769 F. Supp. 57, 63 (D. Mass. 2025); *Chinn v. GMC*, 2007 WL 4287594, at 2 (D. Mass. Dec. 7, 2007) (at motion to dismiss stage, "[w]ithout a stipulation of the parties, the court is unable to make a choice-of-law determination at this early stage").  Additionally, BCH reserves the right to raise federal pre-emption of Plaintiff's claims.

**I.      BCH HAD NO RELATIONSHIP WITH THE DECEDENT AND OWED HIM NO DUTY.**

A.  **The Decedent had no doctor-patient or other relationship with BCH**.

If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence.  *Lev v. Beverly Enters.-Mass., Inc.*, 457 Mass. 234, 239-240 (2010).[7]  A person ordinarily has no duty to protect a third party against the dangerousness or unlawful acts of others, *Luoni v. Berube,* 431 Mass. 729, 731 (2000), except where there is a "special relationship." *Coombes v. Florio*, 450 Mass. 182, 185 n. 3 (2007); Restatement (Second) of Torts § 315(a) (1965).  The physician-patient relationship is not a "special relationship" creating a duty to third parties.  The physician-patient relationship involves an affirmative duty to care only for the well-being of the patient *in the course of treatment*.  *St. Germain v. Pfeifer,* 418 Mass. 511, 520 (1994) (emphasis added); Cf. Restatement (Third) of Torts: Liability for Physical Harm § 41 comment c (Proposed Final Draft No. 1, 2005) ("Unlike most duties, the physician's duty to the patient is explicitly relational: physicians owe a duty of care to *patients* " [emphasis in original]).

Here, no duty was created between BCH and the Decedent.  The Decedent was not treated by BCH and was not enrolled in the Clinical Study.  In essence, Plaintiff argues as follows:

> …*treatment decisions* were left to [UTSWMC] *physician discretion* without standardized safeguards … [reports of] concerning *side effects … were not meaningfully addressed* [by UTSWMC physicians].

Complaint, ¶¶ 39, 40.

---

[7]      Texas negligence law is similar to Massachusetts law.  Plaintiff must establish (1) a legal duty owed to the plaintiff; (2) a breach of that duty by the defendant; and (3) damages proximately caused by the breach.  *Rodriguez–Escobar v. Goss,* 392 S.W.3d 109, 113 (Tex. 2013). Proximate cause has two elements: cause in fact and foreseeability. *Id.*  "These elements cannot be satisfied by mere conjecture, guess, or speculation." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004).

Plaintiff admits that "BCH never prescribed anything to [the Decedent]. BCH never examined him, evaluated him, or had any clinical contact with him. No physician-patient relationship existed between BCH and [the Decedent] at any time…"[8] Complaint, ¶ 14. Thus, no duty was created between BCH and the Decedent vis-à-vis the Decedent's medical care and treatment. To the extent that BCH owed the Decedent any duty of care in the context of his medical care at UTSWMC (which it did not), those claims sound in medical negligence and are subject to the provisions of M.G.L. c. 231, § 60B, regardless of how Plaintiff casts her claims.[9] Plaintiff's failure to comply with the statute bars any such claim.[10] *Darviris v. Petros*, 442 Mass. 274, 283 (2004); *Vacca v. Brigham & Women's Hospital, Inc.*, 98 Mass. App. Ct. 463 (2020). In *Vacca*, the Appeals Court noted:

> …most of the alleged breaches [plaintiff] raised sound in medical malpractice and, as a matter of law, cannot be disguised or recast as a breach of contract claim. In Massachusetts, "[e]very action for malpractice, error or mistake against a provider of health care" is subject to certain procedural requirements. G. L. c. 231, § 60B. See G. L. c. 231, §§ 60C-60I.

---

[8]    Physicians generally act as independent contractors and BCH is not liable for their actions. See, e.g., *Kelly,* supra (profession is distinct and requires a high level of skill and training; and the physician must use independent judgment); *Dias v. Brigham Med. Assocs, Inc.*, 438 Mass. 317, 321-322 (2022) (to establish a hospital's liability for a physician's medical malpractice, a plaintiff must establish the physician's employment with the hospital and that the physician's negligence occurred within scope of that employment).

[9]    The Clinical Study was an investigational research protocol which by its very nature does not involve standard therapy.

[10]    Similarly, "health care liability claims" in Texas are subject to the Texas Medical Liability Act's provisions, including its expert-report requirement. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a) (Vernon 2017); *Lout v. The Methodist Hosp.*, 469 S.W.3d 615, 616–17 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A "health care liability claim" is a cause of action against a health care provider for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or *safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract*. Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (emphasis added). Plaintiff's failure to provide any expert report regarding BCH's alleged liability entitles BCH to dismissal of her claims.

> Further, where a malpractice claim is brought against a "nonprofit organization providing healthcare" … damages are capped at $100,000. G. L. c. 231, § 85K. A plaintiff may not circumvent this statutory scheme by "restat[ing] a claim, otherwise subject to the medical malpractice act, as [another type of claim]."

*Vacca*, 98 Mass. App. Ct. at 471.  Thus, Plaintiff has failed to establish that BCH owed the Decedent any duty.

B. **The Decedent was not enrolled in the Clinical Study**.

Plaintiff's allegations that BCH failed to exercise care in conducting the Clinical Trial fail as the Decedent was not enrolled in the Clinical Trial and thus BCH owed him no duty of care. Complaint, ¶ 55; see *Coombes*, supra.  Although Plaintiff alleges that BCH "voluntarily undertook responsibilities intended to protect trial participants," the Decedent was not a trial participant. Complaint, ¶ 34.  The fact that UTSWMC was participating in the same Clinical Study as BCH does not create any duty on the part of BCH to the third-party Decedent, who was not enrolled in or treated pursuant to the Clinical Trial and is alleged to have taken a drug produced by an altogether different manufacturer.

C. **BCH does not have a duty to patients at other facilities whose independent physicians prescribe medication**.

BCH has no duty to patients treated by independent, professional physicians at other institutions.  It must be said as a matter of law that BCH could not reasonably foresee that a physician at another facility (UTSWMC) would prescribe or administer everolimus to the Decedent, a man in his seventies, based upon a pediatric Clinical Study in which the Decedent was not enrolled.  BCH cannot be held responsible for the independent clinical decisions of a non-BCH physician practicing at non-BCH hospital and who had no involvement in the Clinical Study at BCH.  Moreover, the fact that the Decedent's non-BCH physician may have been involved in an everolimus study at another institution, or was aware of the drug everolimus, similarly does not

create any duty owed by BCH to the Decedent.  See, e.g., *Kelly v. Rossi*, 395 Mass. 659 (1985) (profession is distinct and requires a high level of skill and training; and the physician must use independent judgment).   In this case, the Decedent made a decision, purportedly on the recommendation of the independent, professional clinical judgment of his own physician at UTSWMC, outside of and unrelated to the Clinical Study, to take a medication.  There is no legal theory under which BCH may be liable for that decision.

D. **BCH owed the Decedent no other duty of care**.

Plaintiff's remaining theory – that BCH failed to exercise care in managing potential "conflicts" of physicians who served as "both investigators and clinicians" at another institution is not a viable claim under the law.[11]  Complaint, ¶ 31.  Essentially, Plaintiff claims that BCH had a duty to oversee the independent clinical decision-making of physicians at other institutions by ensuring those physicians did not treat patients with a drug that was also used in BCH's study.[12] Plaintiff alleges that because physicians involved in the study operated in both research and clinical roles, it was "reasonably foreseeable" that the physicians' involvement in the study would influence their treatment decisions for non-enrolled patients.

Such a theory would impose an impossible and inappropriate burden on physicians and institutions and has no basis in the law.  Plaintiff suggests that the Clinical Trial (in which the Decedent was not enrolled) should not have been conducted within the "same clinical environment in which [the Decedent] received care," presumably, that is, the teaching and research hospital

---

[11]     As set forth above, Plaintiff does not allege that the Decedent's treating physician was an investigator treating the Decedent under the Clinical Study at UTSWMC.  See Complaint.

[12]     Relatedly, Plaintiff describes the Decedent being "exposed" to everolimus, though she also alleges that the Decedent's UTSWMC physician prescribed everolimus."  Complaint, ¶¶ 3, 56.

where he was treated.  Complaint, ¶ 52.  In fact, Plaintiff goes so far as to suggest there should be a prohibition on a physician treating patients with everolimus if the physician had prior experience with everolimus at a different facility that participated in the Clinical Trial.  Complaint, ¶ 35. Courts have exercised sound discretion in rejecting a duty based on such tenuous relationships.[13] *Santos v. Kim,* 429 Mass. 130, 137 (1999); *Campbell v. Thorton,* 368 Mass. 528, 535-36 (1975) (no medical malpractice liability because of defendant's position as chief of staff of hospital); *Halley v. Birbiglia,* 390 Mass. 540, 548-49 (1983) (no duty to patient where relationship with physician amounted to mere informal consultant or assisting physician); *Harnish v. Children's Hosp. Med. Ctr.,* 387 Mass. 152, 159 (1982); *Darke v. Estate of Isner*, 20 Mass. L. Rptr. 419 (Sup. Ct. 2005) (subinvestigator proposal that plaintiff was candidate for clinical trial and awareness of his participation insufficient to create doctor-patient relationship).  Conceding to Plaintiff's proposed restrictions and imposing a duty on researchers and treating clinicians toward persons not their patients would not only have a chilling effect on research, but would render patient care virtually impossible in many instances.

    E.  **<u>Imposing any such duty is contrary to public policy</u>**.

Even had Plaintiff alleged sufficient facts to establish any duty (which she has not), the Court must still consider as a matter of public policy whether the imposition of a duty is "inadvisable or unworkable."  *Jupin v. Kask*, 447 Mass. 141, 151 (2006), quoting *Remy v. MacDonald*, 440 Mass. 675, 677 (2004); Restatement (Third) of Torts, § 7(b).  Relevant to the instant case, "public policy favors the development and marketing of new and more efficacious drugs."  *Payton v. Abbott Labs*, 386 Mass. 540, 573 (1982) (rejecting liability for injuries resulting

---

[13]    Texas courts have reached similar results.  See, e.g., *Ortiz v. Shah*, 905 S.W.2d. 609, 612 (14th Distr. Ct. App. 1995) (duty imposed when once the relationship is established; simply being on call does not establish a relationship with any patient who comes into the emergency room).

from the negligence of other marketers and even for injuries caused by drugs marketed non-negligently by others). "Imposition of such broad liability could have a deleterious effect on the development and marketing of new drugs, especially those marketed generically." Id. Imposing a duty on a study sponsor to all patients at another institution where patients may be prescribed a drug similar to that used in the study will bring a chilling effect on the conduct of research. To accept plaintiff's theory of liability would result in teaching and research hospitals across the nation being saddled with lawsuits and potential unlimited liability for the actions of unknown third-party physicians and their patients with whom the hospital has no direct or indirect affiliation or relationship.

In the absence of any duty owed, Plaintiff's Negligence and Negligent Undertaking (Count I) claims must be dismissed.

## II.    BCH IS ENTITLED TO DISMISSAL OF PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT II).

Plaintiff alleges that Clinical Trial materials (for a study in which he was not enrolled) failed to include information regarding everolimus, including its lack of FDA approval for us in heart transplantation and known risk profile[14]; and that the Clinical Trial Consent Form was insufficient. Complaint, ¶ 57. Plaintiff alleges that BCH negligently misrepresented risks in materials presented not to the Decedent, but merely in the "clinical and research environments" in which the Decedent was treated. Complaint, ¶ 59. As set forth above, BCH owed no duty to the Decedent; the Decedent was not enrolled in the Clinical Trial; and thus the Decedent was not a

---

[14]    As set forth above, the Clinical Trial was an investigational protocol studying the use of Novartis' everolimus and thus, by its very nature, was not standard therapy. At no time did BCH promote or encourage any "off label" use of everolimus, nor did it play any role in the administration of everolimus to the Decedent. See also *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 350, 121 S. Ct. 1012, 148 L.Ed.2d 854 (2001) (off-label use of devices by physicians not per se unlawful).

recipient or intended recipient of any Clinical Trial Materials, including consent forms. Moreover, Plaintiff has not alleged that BCH made any representations to the Decedent or the Decedent's physician. See Complaint. As a result, Plaintiff's claim fails.

A duty to disclose "arises only in a number of discrete situations," none of which is present here. *Greenery Rehabilitation Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73, 78 (1994); see Restatement (Second) of Torts: Liability for Nondisclosure § 551 (1977). In most cases, silence does not constitute a basis for claiming fraud and misrepresentation, even where a party may have knowledge of some weakness in the subject of the sale and fails to disclose it. *Urman v. South Boston Sav. Bank*, 424 Mass. 165, 168 (1997). "Justifiable reliance" is integral to a claim for negligent misrepresentation. *Bourgault v. Halben*, 2026 WL 1410725 (App. Ct. Slip 2026), citing *Marram v. Kobrick Offshore Fund, Ltd*., 442 Mass. 43, 59 (2004). Here, Plaintiff fails to allege that the Decedent or his physician in any way relied on alleged misrepresentations made by BCH. Consequently, BCH is entitled to a dismissal of Plaintiff's claims sounding in negligence. *Bourgault*, supra, citing *Sullivan v. Five Acres Realty Trust*, 487 Mass. 64, 75 (2021).

## III.    BCH IS ENTITLED TO DISMISSAL OF PLAINTIFF'S WRONGFUL DEATH CLAIM (COUNT III).

Plaintiff has sued individually and as "personal representative" of the decedent's estate.[15] The Texas Wrongful Death Act provides, in relevant part, as follows:

(a)    An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.

(b)    The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

(c)    If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.

---

[15]    Although Plaintiff alleges that she is the daughter of the Decedent, she does not allege that she has brought her wrongful death action on behalf of statutory beneficiaries. Complaint, ¶ 4.

TX Civ. Prac. & Rem. § 71.004.

The exclusive right to bring a wrongful death action on behalf of a decedent's statutory beneficiaries rests with the duly-appointed "executor or administrator" of the deceased's estate.[16] There has been no showing either that Plaintiff is the sole heir or that the heirs have entered into a family settlement agreement, or any other basis for Plaintiff's claim.  See *Shepherd*, 962 S.W.2d at 32–33; see *Rodgers v. Lancaster Police & Fire Department*, 819 F.3d 205, 213 (5th Cir. 2016) (dismissing purported plaintiff's claim upon finding that "it remains uncertain whether she is the estate's sole heir," in turn making it "unclear whether administration is necessary and, thus, whether she has capacity to maintain a survival action as a legal heir").  Under Texas law, an heir only has capacity to bring survival claims "if she can plead and prove that there is no administration pending and that none is necessary." *Pickens v. City of Austin*, 2005 WL 8157348, *9 (W.D. Tex.); see also *Jackson v. City of Houston*, 2023 WL 7093031, *4 (S.D. Tex.), quoting *Garcia v. Caremark, Inc.*, 921 S.W.2d 417, 421 (Tex. App. 1996). That in turn requires pleading and proof that the estate's disposition is resolved, with all debts paid. See *Rodgers*, 819 F.3d at 212, citing *Shepherd*, 962 S.W.2d at 33.

Because BCH did not owe the Decedent a duty of care, Plaintiff's claims under the Wrongful Death Act fail.  They cannot support liability absent an accompanying duty.  *See* Tex. Civ. Prac. & Rem. Code § 71.003(a) (providing a cause of action under the Wrongful Death Act "only if the individual injured would have been entitled to bring an action for the injury if the

---

[16]     Under Massachusetts law, Plaintiff has failed to comply with M.G. L. c. 228, § 1 and M.G.L. c. 190B § 3-108. Actions brought before the appointment of an estate representative are a nullity.  *GGNSC Admin. Serv., LLC v. Schraeder*, 484 Mass. 181, 188 (2020) (only executor can initiate wrongful death action); *Brooks v. Boston & Northern Street R. Co.*, 211 Mass. 277 (1912); *Silva v. McCara*, 2011 WL 7788011 (Sup. Ct. 2011); *Marco v. Green*, 415 Mass. 732 (1993); *Fisher v. Fisher*, 2020 WL 806720 (Land Ct. 2020).

individual had lived"); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 360 (5th Cir. 2005) (ability to pursue remedies "for such wrongs as are recognized by the law of the land" (citation omitted)).  Thus, BCH is entitled to dismissal of Plaintiff's wrongful death claim (Count III).

## IV.     ANY RECOVERY BY PLAINTIFF AGAINST BCH IS LIMITED BY THE CHARITABLE CAP.

Plaintiff's attempt to circumvent the charitable cap is not supported by the law.  Plaintiff's suggestion that BCH's involvement in the Clinical Study deprives it of the benefit of the charitable cap is misplaced.  Complaint, ¶ 15.  BCH has long been recognized as a charitable organization entitled to the protections of M.G.L. c. 231, § 85K.  See, e.g., *Davis v. Commissioner of Revenue*, 390 Mass. 1006 (1984); *Testa v. Swartz*, 64 Mass. App. Ct. 1110 (2005); *Nadal-Ginard v. Children's Hospital Corp.*, 1995 Wl 1146118 (Sup. Ct. 1995) (awarding summary judgment limiting damages against BCH based on charitable status).  Furthermore, as set forth more fully below, where a negligence claim is brought against a "nonprofit organization providing healthcare" such as BCH, damages are capped at $100,000.  M.G. L. c. 231, § 85K.

### A.  <u>BCH was organized as a charitable entity</u>.

BCH was incorporated as a charitable corporation pursuant to M.G.L. c. 180, § 1 *et seq.* Pursuant to its articles of organization BCH's charitable purpose is, in relevant part, as follows:

> provide medical and surgical care and treatment to infants, children, adolescents, young adults, and adults with congenital problems; to instruct, supervise and train physicians, nurses, technicians and others in the care, treatment and prevention of diseases of infants, children adolescents, young adults and adults with congenital defects; to operate and conduct a hospital or hospitals, **together with affiliated institutions, research laboratories and other services where all the resources of medical and related sciences will be combined to provide quality care** for infants, children, adolescents, young adults and adults with congenital defects establish and maintain a hospital medical center and health care system. . . **[and] to promote the general health and welfare of the community**.

14

When a corporation presents a charter that shows the corporation to be charitable, that charter is prima facie evidence of the corporation's charitable purpose and operation. *Goldberg v. Northeastern University*, 60 Mass. App. Ct. 517 (2204); *Barrett v. Brooks Hosp., Inc.,* 338 Mass. 754, 757–758 (1959). It is undisputed that BCH was organized as a charity and its dominant purpose is for the public good.

B. **Charitable organizations are entitled to immunity for tort liability.**

The statute was enacted to abolish common law charitable immunity for tort liability, "provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs; and provided further, that in the context of medical malpractice claims against a nonprofit organization providing health care, such cause of action shall not exceed the sum of $100,000, exclusive of interest and costs." In most cases, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission. *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 26 (1997). Given that care and treatment of patients is a charitable purpose, "[h]ospitals are quintessentially the types of organizations that the legislature intended to benefit from the operation of the charitable immunity cap law." *Rivera v. University of Massachusetts Memorial Healthcare,* 2005 WL 2541935 at 2 (Mass. Super. 2002). The clear language of the statute states that the charitable cap applies: (1) to causes of action raised in tort; (2) for activities carried out to accomplish the defendant's charitable purpose; and (3) for activities that are not primarily commercial in nature. Where these elements are met, the statutory cap is mandatory. *Keene v. Brigham & Women's Hospital, Inc.*, 439 Mass. 223, 240 (2003) (holding that the statutory cap cannot be stricken as a sanction where the legislature has made no such exception

15

to its applicability); *Conners v. Northeast Hospital Corp., 439 Mass. 469,* 477 (2003) (cap applied to allegations involving a slip and fall accident on hospital grounds); *Keene*, *supra* 439 Mass. at 240 (cap applied to medical malpractice allegations and defendant hospital's negligence in losing critical medical records); *Derry v. Saint Vincent Hospital*, 2001 WL 171191 (Mass. Super. 2001) (Fecteau, J.) (cap applied to allegations under the Emergency Medical Treatment and Active Labor Act); *Bonnano v. Harvard Pilgrim Healthcare, Inc.*, 2000 WL 49639 (Mass. Super. 2000) (Connolly, J.); *Nadal-Ginard v. Children's Hospital Corp.*, supra (cap applied to numerous torts arising out of hospital's actions against plaintiff after discovering possible financial misconduct by plaintiff).

C. **Plaintiff's claims in this case are capped by M.G.L. c. 231, § 85K.**

BCH meets each of the criteria for application of the cap.  First, it is axiomatic that medical malpractice sounds in tort.  *Keene*, 439 Mass. at 240 (2003) (statutory cap applies in a medical malpractice action); *Harlow v. Chin*, 405 Mass. at 699 (charitable cap apples to Massachusetts General Hospital in a medical practice action).

Second, Plaintiff has no prospect of presenting any evidence to refute BCH's charitable status.  A charitable organization's "articles of organization are prima facie evidence of its charitable character and purpose . . . " *Conners*, 439 Mass. at 474. Additionally, an institution will be classified as charitable if its dominant purpose is for the public good and the work done for its members "is but the means adopted for this purpose." *Id*. at 474. Neither the size of an institution nor the source of its funding determines whether the institution is charitable. *Id*. at 475. Similarly, the fact that a fee is charged for services provided by an institution is also irrelevant to determining whether the institution is charitable. *Harlow v. Chin*, 405 Mass. at 716.

Third, it is clear from the very allegations of the complaint and discovery that the activities giving rise to this action were conducted in furtherance of BCH's charitable purpose. Specifically,

16

participating in clinical research related to the care and treatment of pediatric patients directly accomplishes the charitable purpose of providing hospital and healthcare services to patients and the community.

Finally, the one exclusion to the statutory cap where the activity giving rise to the cause of action is primarily commercial in nature does not apply here. Plaintiff's claims relate to a clinical trial in which BCH participated. There can be no question that this research trial not only serves BCH's charitable purpose but is in fact <u>the</u> charitable purpose of the hospital. *Conners, supra* at 475 (emphasis added). The fact that revenue is generated does not alter the fact that an activity that directly accomplishes the charitable institution's purpose and is not primarily commercial in nature. *Conners*, *supra* at 479-480. Neither gross negligence nor intentional conduct are exceptions to the cap where the action arises in tort. *In re Boston Reg'l Med. Ctr., Inc.*, 328 F. Supp. 2d, 130, 154-55 (D. Mass. 2004). Thus, M.G.L. c. 231, sec. 85K applies to this action and Plaintiff's claims are limited thereby.

## **Conclusion**

For the foregoing reasons, Defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital respectfully moves pursuant to Fed. R. Civ. P. 12 that this Honorable Court *allow* its motion and enter an Order *dismissing* Plaintiff's Complaint in its entirety.

17

Defendant,
The Children's Hospital Corporation
d/b/a Boston Children's Hospital,
By its attorneys,


_Patti Holloran Murphy_____
Robert R. Hamel, Jr. BBO: #567194
rhamel@hmdrslaw.com
Patti Holloran Murphy, BBO: #564470
pmurphy@hmdrslaw.com
Hamel, Marcin, Dunn Reardon & Shea, PC
350 Lincoln Street, Suite 1101
Hingham, MA 02043
(617) 482-0007

Dated:  June 29, 2026

## CERTIFICATE OF SERVICE

I, Patti Holloran Murphy, counsel for defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital hereby certify that this document was filed through the ECG system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by email to the following:

Gallit Fischman
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com
*Pro se Plaintiff*


_Patti Holloran Murphy_____
Patti Holloran Murphy, Esq.
BBO: #564470

Dated: June 29, 2026