UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GALLIT FISCHMAN,                     )
                                     )          Civil Action No. 1:26-cv-11504-WGY
        Plaintiff,                   )
                                     )
        v.                           )
                                     )
BOSTON CHILDREN'S HOSPITAL,          )
                                     )
        Defendant.                   )

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BOSTON CHILDREN'S HOSPITAL'S SECOND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

Plaintiff Gallit Fischman, proceeding pro se, respectfully submits this Memorandum in

Opposition to Defendant Boston Children's Hospital's Second Motion to Dismiss the First

Amended Complaint.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

NATURE OF THE CASE ............................................................................................... 2

LEGAL STANDARD...................................................................................................... 4

ARGUMENT .................................................................................................................. 4

    I. BCH'S SECOND MOTION FAILS TO ADDRESS THE OPERATIVE PLEADING AND
    ATTACKS THEORIES PLAINTIFF DOES NOT PLEAD.......................................................... 4

    II. THE AMENDED COMPLAINT PLAUSIBLY ALLEGES A DUTY ARISING FROM
    BCH'S VOLUNTARY UNDERTAKING. ................................................................................ 6

    III. NEGLIGENT FAILURE TO WARN AND COMMUNICATE RISK IS NOT A
    PHARMACEUTICAL WARNING CLAIM. ............................................................................ 10

    IV. COUNT III (GROSS NEGLIGENCE) PLAUSIBLY ALLEGES GROSS NEGLIGENCE.
    ....................................................................................................................................... 11

    V. PLAINTIFF HAS STANDING TO BRING HER WRONGFUL DEATH CLAIM UNDER
    THE TEXAS WRONGFUL DEATH ACT. .............................................................................. 11

    VI. DEFENDANT'S MOTION DOES NOT ESTABLISH A COHESIVE BASIS FOR
    DISMISSAL. ..................................................................................................................... 13

    VII. BCH'S CHARITABLE CAP ARGUMENTS ARE BEYOND THE SCOPE OF RULE
    12(B)(6). ......................................................................................................................... 14

    VIII. DEFENDANT FAILS TO ESTABLISH THAT ANY COUNT SHOULD BE
    DISMISSED UNDER RULE 12(b)(6)................................................................................... 16

CONCLUSION.............................................................................................................. 19

CERTIFICATE OF SERVICE ...................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-02014-M, 2020 WL 137226 (N.D. Tex. Jan. 13, 2020) .................................................................................................................................. 12

*Altman v. Aronson*, 231 Mass. 588 (1919).......................................................................... 11, 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................. 4

*Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841 (Tex. App.—San Antonio 1997, pet. denied) ...................................................................................................................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................. 4

*Coombes v. Florio,* 450 Mass. 182, 877 N.E.2d 567 (2007) ..................................................... 7

*Cottam v. CVS Pharmacy*, 436 Mass. 316, 764 N.E.2d 814 (2002) ......................................... 7

*Estate of King v. Tex. Dep't of Crim. Just.*, Civil Action No. H-22-1858, 2023 WL 6370646 (S.D. Tex. July 13, 2023) ............................................................................................................ 12

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .............................................................................. 19

*Garcia v. Caremark, Inc.*, 921 S.W.2d 417 (Tex. App.—Corpus Christi 1996, no writ) ........... 12

*GGNSC Admin. Servs., LLC v. Schrader*, 484 Mass. 181 (2020)............................................ 13

*Jackson v. City of Houston*, No. 4:23-CV-00052, 2023 WL 7093031 (S.D. Tex. Oct. 26, 2023) 12

*Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397 (Tex. 1993)............................................ 12

*Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33 (Tex. 1963)..................................................... 12

*Morin v. Ford Motor Co.*, No. 3:07-CV-1700-L, 2009 WL 2486027 (N.D. Tex. Aug. 12, 2009) .......................................................................................................................................... 12

*Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983) ..................................... 7

*Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)........................................ 4

*Pickens v. City of Austin*, No. A-05-CA-294-SS, 2005 WL 8157348 (W.D. Tex. Sept. 29, 2005) .......................................................................................................................................... 12

*Rafferty v. Merck & Co.*, 479 Mass. 141 (2018)..................................................................... 10

*St. Germain v. Pfeifer*, 418 Mass. 511 (1994) .......................................................................... 7

**Statutes**

M.G.L. ch. 190B, § 3-108 ......................................................................................................... 13

M.G.L. ch. 228, § 1, ................................................................................................................. 13

M.G.L. ch. 231, § 85K ........................................................................................................ 14, 15

Tex. Civ. Prac. & Rem. Code § 71.004 ..................................................................... 12, 13, 18, 19

Tex. Civ. Prac. & Rem. Code § 71.021 ...................................................................................... 12

**Other Authorities**

Restatement (Second) of Torts §§ 323 and 324A.............................................................. 1, 6, 16

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................... 2, 4, 7, 11, 13, 14, 15, 16, 17, 18, 19

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 19

**INTRODUCTION**

Boston Children's Hospital ("BCH") seeks dismissal by repeatedly emphasizing facts Plaintiff has never disputed: BCH did not treat Dov Fischman, prescribe everolimus, or enroll him in TEAMMATE. From those facts, BCH broadly argues that it owed no traditional duty to Decedent and then assumes that conclusion defeats every count in the First Amended Complaint. It does not.

Plaintiff's claims arise from the responsibilities BCH voluntarily assumed when it accepted primary regulatory oversight of TEAMMATE, a multi-site clinical trial intended to influence future transplant care. Plaintiff alleges BCH failed to exercise reasonable care in carrying out that undertaking, allowing an investigational treatment strategy to influence patient care outside the trial before sufficient evidence and the safeguards supporting that transition were established. Had BCH not accepted that undertaking, Plaintiff would have no claim against it.

Massachusetts law recognizes that one who voluntarily undertakes responsibilities intended to protect others from a foreseeable risk must perform that undertaking with reasonable care. Restatement (Second) of Torts §§ 323 and 324A. Plaintiff's claims are limited to the scope of the responsibilities BCH voluntarily accepted and the foreseeable consequences of failing to perform those responsibilities with reasonable care.

BCH's Motion does not meaningfully address that undertaking or the specific claims arising from it. Instead, BCH attacks negligence at the highest level of generality, relying on the absence of a physician-patient relationship, direct treatment, trial enrollment, or prescribing authority. It then repeats that generalized duty argument across the remaining counts without analyzing whether the particular allegations supporting each count state a claim under the applicable law.

That deficiency extends throughout the Motion. BCH treats Count II as a pharmaceutical products-liability claim even though Plaintiff alleges an institutional failure to communicate and contain risks within the scope of BCH's undertaking. It quotes the Massachusetts gross-negligence standard but does not explain why the institutional conduct alleged in Count III cannot plausibly satisfy it. It invokes Massachusetts estate-administration requirements and Texas survival-action authorities even though Plaintiff brings Count IV individually under the Texas Wrongful Death Act. Its charitable-cap argument does not seek dismissal of any claim and depends on factual conclusions that cannot be drawn from the pleadings alone.

Fed. R. Civ. P. 12(b)(6) requires BCH to demonstrate why the claims Plaintiff actually pleaded fail as a matter of law. Repeating a generalized objection to traditional negligence does not establish that Plaintiff's negligent-undertaking, failure-to-communicate, gross-negligence, and Texas wrongful-death claims are deficient. BCH does not confront those claims as pleaded. Therefore, its Motion should be denied in its entirety.

**NATURE OF THE CASE**

This case begins with a clinical trial that sought to guide the future treatment of heart-transplant recipients. Plaintiff alleges that, under BCH's primary regulatory oversight, the investigational treatment strategy gained the credibility of an accepted therapeutic approach and reached patients outside the trial before the evidence and safeguards were sufficient to support that transition.

TEAMMATE did not study a failing therapy. It studied stable pediatric heart-transplant recipients who had remained stable on existing calcineurin inhibitor ("CNI") regimens but were nevertheless converted to everolimus with reduced-dose tacrolimus. Apart from age, Dov Fischman had the same clinical profile as the TEAMMATE participants. He was a stable heart-

transplant recipient who had remained on an established CNI regimen that successfully protected his transplanted heart for years before he was converted to everolimus.

According to the Exhibit C – Stanford Medicine TEAMMATE Clinical Trial Homepage attached to the Amended Complaint; TEAMMATE sought the first FDA-approved immunosuppressant for pediatric heart-transplant recipients. It selected everolimus, a drug not approved for adult heart transplantation and specifically not recommended for heart transplant use in its labeling. Rather than pursue pediatric approval through an established transplant therapy, TEAMMATE chose the option carrying the most serious and complex risk profile.

Approval for pediatric heart-transplant recipients would give everolimus powerful scientific and clinical credibility and influence transplant practice more broadly. A therapy deemed suitable for children following heart transplantation would be perceived as sufficiently safe and predictable to support confidence in its use among adult transplant recipients.

That influence was especially significant in the off-label setting, where the decision to use a drug lies with the treating physician. In that discretionary environment, research findings and the narratives surrounding them can directly shape clinical judgment and influence treatment beyond the study population.

As the conversion strategy gained credibility, it moved into UT Southwestern's adult heart-transplant program and reached Dov Fischman, who had remained stable for approximately nine years on an established CNI regimen. He was never enrolled in TEAMMATE, signed no research consent, and received none of the trial's monitoring or protections.

After everolimus was introduced, Dov Fischman experienced adverse effects consistent with the drug's boxed warning. Plaintiff alleges those events did not trigger protections comparable to those available within the TEAMMATE trial. Everolimus was discontinued only

after impaired wound healing prevented a safe diagnostic biopsy. He was then diagnosed with PTLD, continued to decline from a severe unidentified infection, and died on January 6, 2025.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The Court must accept all well-pleaded facts as true, construe the complaint in Plaintiff's favor, and draw all reasonable inferences in her favor. Although duty presents a question of law, the Court must evaluate the specific duties, conduct, and omissions alleged in support of each claim. BCH cannot obtain dismissal by addressing negligence only in the abstract, recasting Plaintiff's claims as traditional medical negligence, or attacking allegations the Amended Complaint does not make. A generalized challenge to negligence does not establish that Plaintiff's negligent-undertaking, failure-to-communicate, gross-negligence, and wrongful-death claims are legally deficient.

**ARGUMENT**

**I. BCH'S SECOND MOTION FAILS TO ADDRESS THE OPERATIVE PLEADING AND ATTACKS THEORIES PLAINTIFF DOES NOT PLEAD.**

Plaintiff filed the First Amended Complaint specifically to address the issues raised in BCH's initial Motion to Dismiss. That amended pleading is now the operative complaint. Rather than addressing it on its own terms, BCH's Second Motion repeatedly relies on arguments directed at allegations and theories that Plaintiff revised, clarified, expressly disclaimed, or omitted. Rule 12(b)(6) requires the Court to evaluate the pleading actually before it, not a superseded complaint or substitute theory constructed by the defendant.

Nearly every argument in BCH's brief rests on the same mistaken premise that Plaintiff seeks to hold BCH liable for Dov Fischman's medical treatment, his physicians' prescribing decisions, or the drug manufacturer's conduct. The Amended Complaint expressly disclaims each theory. BCH never prescribed anything to Mr. Fischman, treated him, or had clinical contact with him. Plaintiff does not seek to hold BCH vicariously liable for another institution's prescribing decisions and does not allege that BCH manufactured, supplied, or labeled the product he received.

BCH's assertion that the Amended Complaint is "wholly devoid of facts establishing any relationship between BCH and the Decedent, or any duty owed by BCH to the Decedent" disregards the institutional pathway alleged between BCH's oversight of TEAMMATE, UT Southwestern's participation in the trial, and the transplant program through which the investigational framework reached Mr. Fischman. BCH's alleged duty arose from the responsibilities it voluntarily assumed, not from direct treatment or a physician-patient relationship.

Mr. Fischman's age, non-enrollment, the geographic distance between BCH and UTSW, and the identity of the manufacturer do not defeat that theory. His non-enrollment defines the alleged harm: TEAMMATE's investigational conversion framework reached him without the protections governing its use within the trial. The claim concerns BCH's oversight and containment of that framework, not the manufacture of the tablets ultimately prescribed.

BCH also speculates that Plaintiff omitted the identity of the generic manufacturer from the Amended Complaint "presumably in an attempt to avoid dismissal." That assertion is unsupported. Plaintiff has not retracted or contradicted the original allegation concerning the manufacturer. She omitted an immaterial fact after BCH used it to construct a product-liability theory that Plaintiff does not plead against BCH. The identity of the manufacturer does not affect

whether BCH breached duties arising from its own voluntary undertaking, and removing that unnecessary allegation created no inconsistency under Rule 11.

Nor does Plaintiff allege that BCH is responsible for every independent decision made by every UTSW physician solely on the ground that UTSW participated in TEAMMATE. Plaintiff alleges a limited duty arising from BCH's centralized oversight of a specific multi-site trial and its failure to exercise reasonable care in preventing that trial's investigational framework from moving through the same institutional environment into routine care for non-enrolled patients.

Set BCH's substitute theory aside, and the theory actually pleaded remains: BCH voluntarily accepted centralized, primary regulatory oversight of TEAMMATE, and its own failure to exercise reasonable care in performing that role allowed an investigational treatment framework to reach a non-enrolled patient without the safeguards TEAMMATE itself required. That duty arises from BCH's own undertaking and the foreseeable consequences of its performance, not from a doctor-patient relationship. Restatement (Second) of Torts §§ 323, 324A.

## II. THE AMENDED COMPLAINT PLAUSIBLY ALLEGES A DUTY ARISING FROM BCH'S VOLUNTARY UNDERTAKING.

### A. BCH's Voluntary Institutional Undertaking Is the Source and Scope of the Duty Alleged.

Plaintiff does not allege that BCH treated Dov Fischman, prescribed medication to him, or owed him a duty arising from a physician-patient relationship. The duty alleged arises from BCH's voluntary acceptance of centralized oversight responsibilities for TEAMMATE.

Sections 323 and 324A of the *Restatement (Second) of Torts* require a party that undertakes services for the protection of another to exercise reasonable care in performing those services. *Restatement (Second) of Torts* §§ 323, 324A (Am. L. Inst. 1965). In *Cottam v. CVS Pharmacy*,

436 Mass. 316, 764 N.E.2d 814 (2002), the Supreme Judicial Court held that although a pharmacy ordinarily had no independent duty to warn of every medication risk, once it undertook to provide warnings, it was required to do so with reasonable care. In *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983) the court likewise recognized that an institution's assumed responsibilities may create a duty to protect against foreseeable harm. *Coombes v. Florio,* 450 Mass. 182, 877 N.E.2d 567 (2007) further confirms that a duty may extend beyond an immediate treatment relationship when the defendant's conduct creates a foreseeable risk to an identifiable third party.

Plaintiff alleges that BCH accepted centralized oversight of TEAMMATE and responsibility for governing its investigational framework. Mr. Fischman's non-enrollment does not defeat that theory. It identifies the risk alleged: the framework moved from the controlled trial at UT Southwestern into its adult heart-transplant program and reached him without the trial's consent, eligibility requirements, monitoring, or safeguards.

BCH's reliance on *St. Germain v. Pfeifer*, 418 Mass. 511 (1994), addresses a treatment-based duty Plaintiff does not plead. *St. Germain* does not foreclose a separate duty arising from an institution's voluntary undertaking. Whether the TEAMMATE framework moved through UT Southwestern as alleged is a factual issue that cannot be resolved against Plaintiff on a Rule 12(b)(6) motion.

**B. BCH Cannot Minimize Its Role by Substituting Titles for Responsibilities.**

In addressing its role in TEAMMATE, BCH states:

"BCH served as the Data Coordinating Center and Statistical Principal Investigator in the multi-center study. Plaintiff relies on a letter purportedly written by UTSWMC to the Texas Attorney General as establishing that BCH had 'primary regulatory oversight' of the trial. Though

BCH strongly disputes that UTSWMC's letter is evidence of or establishes any such oversight, or imposes any duty owed by BCH to the Decedent, this fact is not material to BCH's motion to dismiss."

BCH's characterization is materially incomplete. Plaintiff does not rely on the titles "Data Coordinating Center" or "Statistical Principal Investigator," standing alone, to establish BCH's role. Rather, Plaintiff relies on the responsibilities BCH actually undertook, including the centralized role of its IRB. As reflected in Exhibits A and B attached to the First Amended Complaint, the University of Texas System expressly represented to the Texas Attorney General that BCH's IRB had primary regulatory oversight of TEAMMATE and that UT Southwestern relied upon BCH's IRB pursuant to the SMART IRB Master Reliance Agreement. The Texas Attorney General's Open Records Ruling repeated those representations. Publicly available information concerning TEAMMATE, attached as Exhibit C to the First Amended Complaint, likewise identifies BCH's centralized IRB and oversight responsibilities in terms consistent with those representations.

BCH cannot avoid those allegations by reciting two data-related titles while omitting the regulatory and institutional responsibilities associated with its role. Nor does BCH identify any statement in UT System's letter that it contends is inaccurate. Its unexplained assertion that the letter does not "establish" oversight does not defeat Plaintiff's well-pleaded allegations. At this stage, BCH cannot selectively narrow its role through labels while asking the Court to disregard the responsibilities publicly and formally attributed to it.

**C. The Duty Alleged Arises Solely from BCH's Voluntary Undertaking of TEAMMATE.**

Defendant repeatedly argues that BCH owed no duty to Plaintiff's father on the grounds that he was never a BCH patient, was not enrolled in TEAMMATE, received no care from BCH physicians, and was treated by independent physicians at another institution. Those arguments address duties arising from BCH's status as a hospital or healthcare provider. The duty alleged here arises from a different source: BCH's voluntary acceptance of primary regulatory oversight of TEAMMATE.

The Amended Complaint expressly alleges that this action concerns only the TEAMMATE clinical trial, that TEAMMATE has no separate legal existence, and that BCH is named solely on the ground that it accepted and exercised primary regulatory oversight of that undertaking. Plaintiff's claims are directed to BCH's conduct in performing those responsibilities, not to its hospital operations, nonprofit status, government funding, or research activities generally.

The Amended Complaint further alleges that UT System represented to the Texas Attorney General that BCH's Institutional Review Board held primary regulatory oversight of TEAMMATE pursuant to the SMART IRB Master Reliance Agreement and that the Attorney General confirmed those representations. Plaintiff alleges that BCH voluntarily accepted those responsibilities and that the duties asserted in this action arise from that undertaking.

Defendant also argues that recognizing Plaintiff's claims would discourage medical research and expose teaching hospitals to "potential unlimited liability" for the actions of unknown third-party physicians and patients. That argument rests on a duty Plaintiff does not allege. Plaintiff does not seek to impose a duty upon every research hospital, every study sponsor, or every institution conducting clinical research. Plaintiff alleges only that the institution that voluntarily accepted primary regulatory oversight of a specific multi-site undertaking was required to exercise

reasonable care in performing that undertaking. Had another institution accepted those responsibilities, Plaintiff's claims would have been directed to that institution instead.

Recognition of that limited duty advances the public interest by promoting responsible institutional oversight, accurate risk communication, and appropriate separation between clinical research and routine patient care. Public confidence in clinical research is strengthened, not diminished, by requiring an institution that voluntarily accepts primary regulatory oversight to exercise reasonable care in performing that undertaking.

## III. NEGLIGENT FAILURE TO WARN AND COMMUNICATE RISK IS NOT A PHARMACEUTICAL WARNING CLAIM.

BCH argues that it owed no duty to warn since it did not manufacture, supply, or prescribe the everolimus Mr. Fischman received. It cites *Rafferty v. Merck & Co.*, 479 Mass. 141 (2018), for the rule that a brand manufacturer owes no duty to a generic-drug consumer. That answers a question Plaintiff does not ask. Count II (Negligent Failure to Warn and Communicate Risk) does not allege that BCH owed Mr. Fischman a drug manufacturer's warning duty. It alleges that BCH, having voluntarily accepted responsibility for TEAMMATE's consent materials and risk-disclosure framework, failed to exercise reasonable care in communicating and containing the known risks that its own safety framework was designed to address. Rafferty addresses only whether a manufacturer's duty extends to a competitor's customers. It says nothing about an entity that accepts centralized responsibility for a trial's risk-communication framework. The learned-intermediary doctrine is equally beside the point. Plaintiff does not allege that BCH had a duty to warn Mr. Fischman directly, bypassing his physicians. Plaintiff alleges that BCH failed to manage known risks through the institutional channels its own undertaking created. Whether BCH possessed that information, and whether its practices were reasonable, are factual questions for

discovery. They are not resolved by recharacterizing Count II (Negligent Failure to Warn and Communicate Risk) as something it is not.

## IV. COUNT III (GROSS NEGLIGENCE) PLAUSIBLY ALLEGES GROSS NEGLIGENCE.

BCH argues that the conduct alleged, even if true, cannot rise to the "heedless and palpable violation of legal duty" required under *Altman v. Aronson*, 231 Mass. 588 (1919). That asks the Court to weigh the seriousness of BCH's conduct on the pleadings alone. That inquiry belongs to a jury on a developed record, not a Rule 12(b)(6) motion. Plaintiff alleges that BCH's senior decisionmakers knew everolimus carried FDA boxed warnings for serious infection, malignancy, and death in transplant populations. BCH knew that physician-investigators in TEAMMATE worked simultaneously in ordinary clinical roles in the same transplant programs. BCH authorized an oversight structure that failed to separate research from clinical care, manage dual-role conflicts, or prevent trial-derived practices from reaching non-enrolled patients. Accepted as true, as they must be at this stage, those allegations describe more than an isolated slip. They describe a knowing failure to build any containment around a foreseeable, serious risk. Whether the evidence bears that out is a question for summary judgment or trial, not dismissal.

## V. PLAINTIFF HAS STANDING TO BRING HER WRONGFUL DEATH CLAIM UNDER THE TEXAS WRONGFUL DEATH ACT.

BCH argues that Plaintiff lacks capacity to sue individually rather than as an estate representative. It relies on Texas survival-action authority and Massachusetts estate-administration statutes. Both address the wrong cause of action.

Texas law recognizes wrongful-death and survival actions as separate remedies. A wrongful-death claim belongs to the statutory beneficiaries designated by Tex. Civ. Prac. & Rem.

Code § 71.004 and compensates them for their own losses, while a survival action belongs to the estate under Tex. Civ. Prac. & Rem. Code § 71.021. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397 (Tex. 1993); *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33 (Tex. 1963). Plaintiff asserts only her own wrongful-death claim as Dov Fischman's surviving child under § 71.004(a) and (b), seeks no estate damages, and sues in no representative capacity.

Section 71.004 (c) provides that if no statutory beneficiary commences an action within three months after death, the executor or administrator shall bring it unless requested not to do so by all beneficiaries. It imposes a duty on an existing executor or administrator; it does not require beneficiaries to open an estate, require appointment of an executor where none exists, or extinguish their rights after three months. *Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-02014-M, 2020 WL 137226 (N.D. Tex. Jan. 13, 2020); *Trostle v. Trostle*, 77 S.W.3d 908 (Tex. App.—Amarillo 2002, no pet.); *Morin v. Ford Motor Co.*, No. 3:07-CV-1700-L, 2009 WL 2486027 (N.D. Tex. Aug. 12, 2009). No estate was opened, no representative was appointed, and none has sought to prosecute either claim.

The authorities BCH cites for the proposition that an heir must plead the absence of estate administration, *Pickens v. City of Austin*, No. A-05-CA-294-SS, 2005 WL 8157348 (W.D. Tex. Sept. 29, 2005), *Jackson v. City of Houston*, No. 4:23-CV-00052, 2023 WL 7093031 (S.D. Tex. Oct. 26, 2023), and *Garcia v. Caremark, Inc.*, 921 S.W.2d 417 (Tex. App.—Corpus Christi 1996, no writ), concern survival actions, not an individual wrongful-death claim. Likewise, *Estate of King v. Tex. Dep't of Crim. Just.*, Civil Action No. H-22-1858, 2023 WL 6370646 (S.D. Tex. July 13, 2023), addressed executor status and estate claims. Section 71.004(c) is not a limitations provision and neither restricts nor expands the two-year limitations period. *Enciso v. Chmielewski*, No. 14-99-00714-CV, 2000 WL 423085 (Tex. App.—Houston [14th Dist.] Apr. 20, 2000, no pet.).

BCH's Massachusetts authorities, M.G.L. ch. 228, § 1, M.G.L. ch. 190B, § 3-108, and *GGNSC Admin. Servs., LLC v. Schrader*, 484 Mass. 181 (2020), govern Massachusetts claims and estate administration, not Plaintiff's Texas claim. Mr. Fischman was domiciled, treated, injured, and died in Texas. Section 71.004(b) permits one or more beneficiaries to sue "for the benefit of all," while each may recover only her own damages. *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841 (Tex. App.—San Antonio 1997, pet. denied).

BCH's remaining wrongful-death argument is derivative of its Count I duty argument and fails for the reasons stated above.

## VI. DEFENDANT'S MOTION DOES NOT ESTABLISH A COHESIVE BASIS FOR DISMISSAL.

Plaintiff recognizes Defendant's right to challenge the sufficiency of the Amended Complaint under Rule 12(b)(6) and obligation to plead facts sufficient to state a plausible claim for relief. Plaintiff respectfully submits that the Amended Complaint satisfies that standard.

Defendant's Motion does not present a focused Rule 12(b)(6) challenge to the claims actually pleaded. Instead, it advances a series of factual assertions, legal principles, and characterizations without explaining how they establish that the Amended Complaint fails to state a legally cognizable claim.

The Motion moves among arguments concerning the absence of a physician-patient relationship, Mr. Fischman's non-enrollment in TEAMMATE, his age and ineligibility for the pediatric trial, the identity of the drug manufacturer, the independent judgment of his treating physicians, judicial notice, charitable immunity, Plaintiff's original Complaint, and Plaintiff's alleged interest in obtaining discovery. Many of these arguments address facts Plaintiff expressly acknowledges, theories the Amended Complaint does not assert, or matters clarified through

amendment. Defendant identifies isolated allegations but does not explain why the claims actually pleaded fail as a matter of law.

Rule 12(b)(6) required Defendant to demonstrate that the operative Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff respectfully submits that Defendant has not made that showing.

## VII. BCH'S CHARITABLE CAP ARGUMENTS ARE BEYOND THE SCOPE OF RULE 12(B)(6).

BCH devotes an entire section of its Motion to M.G.L. ch. 231, § 85K and repeatedly asserts that Plaintiff is attempting to "circumvent" the charitable cap. Plaintiff does no such thing. The Amended Complaint does not challenge BCH's corporate charter, nonprofit status, or historical recognition as a charitable organization. Nor does it seek to invalidate any statutory limitation on damages. Instead, BCH raises an affirmative defense concerning the amount of any potential recovery. Even if accepted, that defense would limit damages, not determine whether Plaintiff has stated plausible claims for relief. It therefore provides no basis for dismissal under Rule 12(b)(6).

Section 85K applies only when the challenged activity was carried on "directly to accomplish" the corporation's charitable purpose and was not primarily commercial. *Conners v. Northeast Hospital Corp.*, 439 Mass. 469, 474–75 (2003). Whether BCH's centralized regulatory oversight of a twenty-five-site, Department of Defense-funded national drug trial satisfies those requirements is a fact-dependent question that cannot be resolved from the pleadings alone.

BCH asks the Court to conclude, at the pleading stage, that its conduct directly furthered its charitable purpose, was not primarily commercial in nature, constituted medical malpractice, and falls within both Massachusetts General Laws chapter 231, § 85K and the Texas Medical

Liability Act. Those issues extend well beyond the limited inquiry under Rule 12(b)(6), which asks only whether the Amended Complaint states plausible claims upon which relief may be granted.

BCH's charitable-cap argument also exposes a fundamental inconsistency in its Motion. Throughout its briefing, BCH repeatedly argues that it owed Dov Fischman no duty because he was never a BCH patient, never enrolled in TEAMMATE, never received treatment from BCH physicians, and was treated exclusively by independent physicians at UT Southwestern. Yet, when seeking the protections of § 85K and the TMLA, BCH characterizes the very same conduct as "clinical research related to the care and treatment of patients," "hospital and healthcare services," and "medical malpractice."

Those competing characterizations cannot both support dismissal. BCH cannot simultaneously contend that TEAMMATE was too remote from Dov Fischman's care to give rise to any duty while arguing that the same conduct constitutes healthcare services and medical malpractice for purposes of obtaining statutory protections. Although BCH may plead affirmative defenses in the alternative, those defenses do not establish that Plaintiff's claims fail as a matter of law.

Nor does Plaintiff allege that BCH is liable simply because it is a charitable hospital or because it conducted research. Plaintiff alleges that BCH voluntarily accepted primary regulatory oversight of TEAMMATE and is liable for its own conduct in carrying out that undertaking. Whether BCH ultimately satisfies the requirements of § 85K, whether the challenged conduct directly accomplished its charitable purpose, whether the conduct was primarily commercial in nature, or whether any statutory limitation on damages applies are questions beyond the scope of Rule 12(b)(6) and do not establish the insufficiency of the Amended Complaint.

Accordingly, BCH's charitable-cap, charitable-immunity, and Texas Medical Liability Act arguments provide no basis for dismissal of Plaintiff's claims.

## VIII. DEFENDANT FAILS TO ESTABLISH THAT ANY COUNT SHOULD BE DISMISSED UNDER RULE 12(b)(6).

Defendant's Motion repeatedly attacks negligence only at the highest level of generality. It argues that BCH owed no traditional duty arising from the absence of a physician-patient relationship, trial enrollment, or direct involvement in Decedent's medical care, and then assumes that this generalized duty argument defeats every negligence-based count in the Amended Complaint. It does not. While negligence provides the overarching cause of action, each count alleges a distinct basis for liability arising from BCH's own institutional conduct. Rather than addressing those claims individually, Defendant repeatedly returns to the same generalized duty argument without demonstrating why the specific claims pleaded fail as a matter of law. Rule 12(b)(6) requires Defendant to establish that each count asserted in the Amended Complaint fails to state a claim. Since Defendant repeatedly argues against generalized negligence principles instead of the specific claims Plaintiff has pleaded, it has not met that burden.

### A. Count I – Institutional Negligence and Negligent Undertaking

Although Count I is captioned "Institutional Negligence and Negligent Undertaking," the allegations are expressly based upon BCH's alleged negligent undertaking under Restatement (Second) of Torts §§ 323 and 324A. Defendant instead argues only that BCH owed no traditional duty arising from its relationship with Decedent. It never addresses Plaintiff's negligent-undertaking claim or explains why the allegations concerning BCH's voluntary undertaking fail to state a claim. As Defendant does not challenge the negligent-undertaking claim actually pleaded, it has not established that Count I should be dismissed under Rule 12(b)(6).

### B. Count II – Negligent Failure to Warn and Communicate Risk

Defendant likewise fails to address Count II as pleaded. Rather than analyzing Plaintiff's negligent failure-to-warn-and-communicate-risk claim, Defendant simply repeats its generalized duty argument and contends that BCH had no duty to warn as it did not manufacture, supply, prescribe, or introduce everolimus to Decedent. Count II alleges no such claim. It alleges that BCH negligently failed to communicate and contain known risks through the institutional risk-communication responsibilities it voluntarily undertook in connection with TEAMMATE. Defendant never explains why that claim fails as a matter of law. As Defendant does not address the claim actually pleaded, it has not established that Count II should be dismissed under Rule 12(b)(6).

### C. Count III – Gross Negligence

Defendant likewise fails to establish that Count III should be dismissed under Rule 12(b)(6). Rather than analyzing the allegations supporting Plaintiff's gross negligence claim, Defendant simply quotes the Massachusetts definition of gross negligence from *Altman v. Aronson* and then asserts that Plaintiff's allegations "do not rise to the level of gross negligence." Defendant provides no analysis explaining why the institutional conduct alleged in the First Amended Complaint, accepted as true, cannot plausibly satisfy that standard. Instead, Defendant merely repeats its earlier argument that BCH owed no duty to Decedent.

Defendant also argues that Count III is based upon the same underlying conduct as Plaintiff's negligence claims. That is not a basis for dismissal. The question at the pleading stage is not whether Count III arises from the same conduct alleged elsewhere in the Complaint, but whether the factual allegations, accepted as true, plausibly state a claim for gross negligence under Massachusetts law. Defendant identifies no deficiency in those allegations and cites no authority demonstrating that the conduct pleaded cannot, as a matter of law, constitute gross negligence.

Page 17

Since Defendant offers only a conclusory assertion rather than a legal analysis directed to the claim actually pleaded, it has not established that Count III should be dismissed under Rule 12(b)(6).

### D. Count IV – Wrongful Death

Defendant likewise fails to establish that Count IV should be dismissed under Rule 12(b)(6). Plaintiff expressly brings Count IV under the Texas Wrongful Death Act, not under Massachusetts wrongful-death law. Defendant's reliance on Massachusetts statutes requiring appointment of an executor or personal representative therefore does not address the claim Plaintiff actually pleaded.

Plaintiff asserts her wrongful-death claim as Decedent's surviving daughter under Tex. Civ. Prac. & Rem. Code § 71.004(a) and (b). She does not assert a survival claim, seek estate damages, or sue in a representative capacity. Texas law treats wrongful-death and survival actions as separate remedies. A wrongful-death claim belongs to the statutory beneficiaries and compensates them for their own losses, while a survival claim belongs to the estate.

Defendant's reliance on the three-month provision in § 71.004(c) is also misplaced. That subsection provides that, when no statutory beneficiary has commenced an action within three months, the executor or administrator shall bring it unless requested not to do so by all beneficiaries. It imposes a duty on an existing executor or administrator. It does not require the beneficiaries to open an estate, require appointment of an executor where none exists, or terminate the beneficiaries' rights under § 71.004(a) and (b) after three months. Here, no estate was opened, no executor or administrator was appointed, and no personal representative could bring the action.

Section 71.004(c) is not a limitations provision. It does not shorten or replace the two-year limitations period applicable to wrongful-death claims, and Plaintiff filed within that period. Section 71.004(b) expressly permits one or more statutory beneficiaries to bring the action for the

benefit of all, while each beneficiary may recover only the damages that beneficiary personally sustained. Plaintiff seeks only her own wrongful-death damages and does not seek estate damages or damages belonging to any nonparty beneficiary.

As Defendant relies in part on Massachusetts law that does not govern Count IV and otherwise advances an interpretation of § 71.004(c) that does not eliminate Plaintiff's statutory right to bring her individual Texas wrongful-death claim, Defendant has not established that Count IV should be dismissed under Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Boston Children's Hospital's Second Motion to Dismiss in its entirety.

If the Court finds any portion of the First Amended Complaint insufficiently pleaded, Plaintiff alternatively requests leave to amend under Fed. R. Civ. P. 15(a)(2), which directs that leave be freely given when justice so requires absent undue delay, bad faith, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This case remains at the earliest pleading stage. No discovery has occurred, and no scheduling order governs amendment. Plaintiff previously amended in good faith to address the deficiencies BCH identified in its first motion. Any remaining pleading deficiency can be cured consistently with the facts already alleged. Dismissal with prejudice would therefore be unwarranted. Amendment is the appropriate remedy.

Defendant has also requested oral argument. Plaintiff respectfully submits that oral argument is unnecessary. The Motion presents legal issues concerning the sufficiency of the allegations under Rule 12(b)(6), and the parties' written submissions fully present those issues. Plaintiff is a self-represented litigant without formal litigation experience, while Defendant is represented by experienced counsel whose practice routinely includes federal motion practice. The

question before the Court is not which party is the more experienced courtroom advocate, but whether the First Amended Complaint states plausible claims for relief under the applicable pleading standard. Plaintiff submits that the written record provides the most reliable basis for resolving that question without allowing disparities in litigation experience to overshadow the allegations the Court must accept as true. If the Court nevertheless determines that oral argument would assist its consideration of the Motion, Plaintiff is prepared to proceed.

Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Second Motion to Dismiss in its entirety or, alternatively, grant Plaintiff leave to file a Second Amended Complaint, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: July 30, 2026

/s/  *Gallit Fischman*

**GALLIT FISCHMAN, Pro Se**

10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through the Court's CM/ECF system, or by other means authorized by the Federal Rules of Civil Procedure, on July 30, 2026.

/s/  *Gallit Fischman*

GALLIT FISCHMAN, Pro Se