UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GALLIT FISCHMAN,       )
                       )       Civil Action No. 1:26-cv-11504-WGY
     Plaintiff,      )
                       )
       v.          )
                       )
BOSTON CHILDREN'S HOSPITAL,  )
                       )
     Defendant.     )

---

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS**
**(Filed Pursuant to the Court's August 7, 2026 Electronic Order)**

---

Plaintiff respectfully submits this Surreply pursuant to the Court's Order. The Reply has not yet been separately filed, so Plaintiff responds to the version attached to Defendant's Motion for Leave (ECF No. 24) and reserves the right to seek appropriate relief if the version subsequently filed differs materially.

## I. DEFENDANT'S CLAIM-SPLITTING ARGUMENT MISAPPLIES THE DOCTRINE AND IS CONTRADICTED BY THE VERY EXHIBIT DEFENDANT ATTACHES

Defendant's claim-splitting argument fails at the threshold. Claim splitting generally prevents duplicative litigation of the same claim against the same defendant or a party in privity. Here, Plaintiff's claim against BCH arises from BCH's alleged responsibility for TEAMMATE. UT Southwestern, Epic, and Novartis were sued for different conduct arising from different responsibilities. There is no single claim being divided among them.

Defendant's reliance on Restatement (Second) of Judgments § 24 is selective. The provision begins with a "valid and final judgment" and defines the extinguished claim as the plaintiff's rights to

remedies "against the defendant." Defendant skips that framework and quotes only the later transactional factors. The UT Southwestern action ended by nonsuit without prejudice and no adjudication on the merits, so no such judgment exists. Defendant instead treats Plaintiff's father's death following everolimus treatment as the "common nucleus of operative facts." That is the alleged injury, not the underlying conduct. A common injury does not convert separate conduct by separate defendants into one transaction.

Defendant's own authorities reinforce that distinction. *In re Iannochino* treats identity of the causes of action and identity of the parties as separate requirements. *Mancuso v. Kinchla* involved successive litigation between the same parties. *Salvati v. Fireman's Fund Insurance Co.* separately examined whether the claims were sufficiently related and whether the parties were identical or closely related. Defendant invokes the prohibition against withholding claims while skipping the party-identity inquiry that accompanies it.

Defendant's invocation of "gamesmanship" also fails. Plaintiff has sued BCH once, solely for BCH's alleged TEAMMATE responsibilities. UT Southwestern is not alleged to be BCH's subsidiary, partner, successor, or part of its hospital system. Its connection to BCH was limited to participation in TEAMMATE under BCH's alleged primary IRB oversight. That limited relationship does not turn separate alleged conduct by separate institutions into one claim.

## II. BCH'S TEAMMATE UNDERTAKING REQUIRED SCRUTINY OF THE DRUG IT CHOSE AND THE RISKS IT CREATED

Defendant's selective reliance on Plaintiff's other litigation obscures the distinction that matters here. BCH points to Plaintiff's Sixth Amended Petition against UT Southwestern, which alleges institutional negligence and system failures involving deployment of a high-risk, off-label product. This action solely concerns BCH's TEAMMATE responsibilities, including its IRB and Data

Coordinating Center roles, oversight of the drug and risk framework placed into the trial, and safeguards governing that undertaking. The same injury does not make different institutional conduct the same claim.

Plaintiff does not ask the Court to look beyond the four corners of the First Amended Complaint. This Rule 12(b)(6) motion concerns the sufficiency of the claims pleaded here. Defendant chose to inject Plaintiff's other litigation to support claim splitting, but those pleadings do not define BCH's duties. The operative Complaint does.

The Complaint alleges that everolimus had no FDA-approved role in heart transplantation in the United States, broadly suppresses immune function, and carries boxed-warning risks. The label attached to the Complaint states that heart-transplant use is "not recommended" after a clinical trial showed increased mortality often associated with serious infection. TEAMMATE nevertheless tested everolimus in pediatric and young-adult heart-transplant recipients.

The nature of that choice demanded scrutiny. TEAMMATE tested everolimus against established transplant drugs designed primarily to suppress the immune activity responsible for rejecting the transplanted heart. Everolimus was fundamentally different. Also used to treat cancer, it suppressed immune function more broadly, upsetting the critical balance between preventing rejection and preserving the body's ability to fight infection and other consequences of severe immunosuppression. BCH undertook primary oversight of TEAMMATE. Plaintiff alleges that BCH failed to adequately vet everolimus and recognize the significance of exposing pediatric heart-transplant recipients to that broader immunosuppression before approving its use in the trial.

BCH's responsibility did not end there. The Complaint alleges that BCH approved a protocol and materials favoring everolimus conversion while giving insufficient weight to boxed-warning risks,

then failed to implement safeguards preventing that investigational framework from reaching non-enrolled patients. Plaintiff's claim thus encompasses both sides of BCH's alleged failure: inadequate scrutiny of the drug placed into the trial and inadequate safeguards to contain the resulting framework within it.

These allegations are already within the four corners of the operative Complaint. Defendant cannot use a UT Southwestern pleading that never mentions TEAMMATE to displace the allegations against BCH concerning the drug it selected, the risks it evaluated, and the framework it allegedly allowed to reach Plaintiff's father's care.

### III. DEFENDANT MISSTATES THE RECORD AND FAILS TO ADDRESS PLAINTIFF'S UNDERTAKING-BASED DUTY THEORY

Defendant's Reply asserts that "[i]n her twenty-page Opposition, Plaintiff cites not a single case to support the existence of any duty owed by BCH," but the record directly contradicts that assertion. Much of Plaintiff's Opposition addressed authorities BCH itself relied upon and explained why they did not support Defendant's position. Plaintiff also cited affirmative authority of her own, including *Cottam v. CVS Pharmacy* and *Mullins v. Pine Manor College*, and relied on Restatement (Second) of Torts §§ 323 and 324A. Plaintiff was not required to ignore Defendant's authorities merely to increase her own citation count. BCH may wish Plaintiff had cited more cases, but it cannot claim she cited none.

Defendant's footnote concerning statements in Plaintiff's other pleadings does not alter the duty alleged in the operative First Amended Complaint. Whatever use Defendant seeks to make of those pleadings, it cannot replace Plaintiff's undertaking-based theory with a different theory and then seek dismissal of the theory Defendant substituted.

Plaintiff alleges that BCH voluntarily undertook IRB and Data Coordinating Center responsibilities for TEAMMATE and thereby assumed corresponding duties of reasonable care. Defendant's reliance on *Silvia v. Kohl's Inc.* (D. Mass. 2026) does not answer that allegation. *Silvia* establishes that duty is a question of law, which Plaintiff does not dispute, but determining duty still requires applying the law to the facts pleaded rather than disregarding the allegations from which that duty arises.

Defendant's reliance on *Coombes v. Florio* is likewise misplaced. *Coombes* concerned a treating physician's duty arising from treatment of the physician's own patient. Plaintiff does not allege that BCH treated Plaintiff's father, but that BCH assumed and negligently performed distinct TEAMMATE oversight, Data Coordinating Center, and risk-communication responsibilities.

Defendant's remaining authorities likewise do not resolve Plaintiff's theory. *Roe No. 1 v. Children's Hospital Medical Center* (2014) involved alleged harm occurring decades after a former BCH employee left the institution, involving later patients at an unrelated out-of-state hospital with no continuing institutional connection to BCH. Here, Plaintiff alleges ongoing BCH oversight of a live, multi-site trial while UT Southwestern remained an active participating site under the SMART IRB Master Reliance Agreement. *Kavanagh v. Trustees of Boston University* (2003) is similarly distinguishable because the asserted duty there arose without an institutional relationship, while Plaintiff alleges a formal oversight relationship connecting BCH, TEAMMATE, and UT Southwestern.

Defendant nevertheless continues to frame duty as though BCH could owe one only through a direct clinical relationship with Plaintiff's father, which is not the claim pleaded. Plaintiff alleges a distinct duty arising from BCH's voluntary undertaking as TEAMMATE's Institutional Review

Board and Data Coordinating Center. The Reply does not meaningfully confront that undertaking-based theory and instead argues against a broader direct-duty theory Plaintiff did not plead.

## IV. DEFENDANT RECASTS PLAINTIFF'S FAILURE-TO-COMMUNICATE CLAIM AS A TRADITIONAL FAILURE-TO-WARN CLAIM AND NEVER ADDRESSES THE THEORY ACTUALLY PLEADED

Defendant again addresses Plaintiff's claims only at the broadest level while avoiding the specific cause of action pleaded. Defendant titles its argument "Plaintiff Has Failed to Establish a 'Negligent Failure to Warn' Claim," but Count II is expressly pleaded as "Negligent Failure to Warn and Communicate Risk." The distinction matters.

Plaintiff does not allege that BCH owed Plaintiff's father a conventional pharmaceutical duty to warn him or his physicians directly. Count II alleges that BCH assumed responsibility for TEAMMATE's risk communications and failed to exercise reasonable care in preventing an incomplete risk framework from extending beyond the trial without adequate safeguards.

Defendant does not address that theory. Instead, it argues that Plaintiff's father's non-enrollment in TEAMMATE is "fatal" because any duty to communicate or contain risk "runs only to participants in the trial." But Plaintiff's claim is based on the framework reaching a non-enrolled patient outside the trial's protections. His non-enrollment does not defeat the claim. To the contrary, it is what makes the claim possible.

This oversight relationship did not absolve BCH of its independent duties, nor did it merge BCH's distinct trial responsibilities with UT Southwestern's separate responsibilities concerning clinical care. To the contrary, BCH retained an independent duty to ensure its experimental framework remained properly contained. Federal law recognizes a boundary between investigation and

established use. 21 C.F.R. § 312.7(a) prohibits sponsors and investigators from promoting an investigational drug as safe or effective for the use under investigation.

Plaintiff alleges that BCH nevertheless allowed the TEAMMATE framework to breach the boundary between controlled research and ordinary clinical care. This line existed for a vital reason; the treatment was still experimental, and Plaintiff's father was never part of that investigation. BCH's alleged failure to maintain that boundary directly compromised the care of Plaintiff's father.

## V. THE TREATING PHYSICIANS' INDEPENDENT DECISION DOES NOT DEFEAT CAUSATION OR CHANGE THE CLAIM PLEADED

Defendant similarly mischaracterizes Plaintiff's acknowledgment that the ultimate treatment decision remained with the treating physicians. Massachusetts law does not require BCH's alleged negligence to be the sole cause of the harm. Under *Doull v. Foster*, 487 Mass. 1 (2021), factual causation asks whether the harm would have occurred but for the defendant's negligent conduct, or stated another way, whether that conduct was necessary to bring about the harm. Multiple acts or omissions may satisfy that standard. Legal causation separately asks whether the resulting harm fell within the scope of the foreseeable risk created by the negligent conduct. *See Leavitt v. Brockton Hospital, Inc.*, 454 Mass. 37 (2009). The existence of an independent treatment decision therefore does not itself sever causation. The question is whether BCH's alleged failures were necessary to bringing about the harm and whether that harm fell within the foreseeable risks those duties were intended to prevent.

Defendant also recasts Plaintiff's theory as imposing a duty to prevent physicians from "learning about" research. That is not the allegation. Plaintiff alleges that BCH assumed responsibility for

TEAMMATE's risk communications and failed to exercise reasonable care in how the everolimus-conversion framework and its risk-benefit narrative moved beyond the trial.

Defendant removes the allegations that define Plaintiff's claim, recasts what remains as a different theory, and attacks that substituted theory. Rule 12(b)(6) tests the claim actually pleaded, not Defendant's reformulation of it.

## VI. DEFENDANT IDENTIFIES NO BASIS TO REQUIRE DISCLOSURE OF PLAINTIFF'S DRAFTING PROCESS OR ATTORNEY ASSISTANCE

Defendant suggests that the thoroughness of Plaintiff's filings warrants inquiry into how they were prepared. Its authorities do not support that request. Even if Plaintiff used generative AI as a drafting aid or received informal assistance from an attorney, Defendant identifies no District of Massachusetts rule, standing order, or other authority requiring disclosure of either. The quality of a pro se filing is not evidence that someone else wrote it, and Plaintiff's compliance with Rule 11 does not depend on her education, profession, or use of lawful drafting and research tools.

Defendant's own authorities undermine its position. *Souza v. City of Fitchburg* recognized that no rule prohibits litigants from using generative AI and cautioned only against inaccurate or fabricated material. *Traver v. GM Financial Co.* imposed a certification requirement only after false or fictitious representations were found. *Van Etten v. Fattman* likewise involved inaccurate statements of law, not a general disclosure requirement. Defendant identifies nothing comparable here: no fabricated citation, misstated holding, or factual misrepresentation.

The request concerning attorney assistance fails for the same reason. *Ellis v. State of Maine* requires an attorney to sign a brief substantially prepared by that attorney; it does not require disclosure of informal consultation. *United States v. Robinson* creates no broader obligation.

Plaintiff signs her own filings as a pro se litigant in accordance with Rule 11, and Defendant identifies no rule or standing order requiring more.

Plaintiff's filings are based on her investigation of the facts, the records available to her, and the legal authorities cited in her papers. Defendant identifies no inaccurate authority, false factual assertion, or governing rule requiring Plaintiff to disclose the lawful tools or informal assistance used in preparing a filing.

Nor should Plaintiff's pro se status become a procedural advantage for Defendant. Defendant repeatedly treats Plaintiff's ability to answer new theories and factual characterizations as something requiring explanation while also seeking additional procedures, including a hearing, without showing why they are necessary. Pro se status does not diminish Plaintiff's right to answer Defendant's arguments, challenge new theories, or insist that the claims actually pleaded be addressed.

The issue is the evidence. Much of the information needed to determine what occurred remains within Defendant's control. Plaintiff has spent nearly two years reconstructing events from outside the institutions involved. Her persistence is not misconduct, and the detail in her filings is not grounds to question their legitimacy. It reflects an effort to understand what happened and to obtain through lawful process evidence she could not obtain independently.

## VII. CONCLUSION

Defendant's Reply does not establish that Plaintiff impermissibly split a claim, that BCH could not owe a duty arising from its alleged voluntary undertaking, or that an independent treatment decision defeats causation. Instead, Defendant repeatedly recasts the First Amended Complaint as asserting theories Plaintiff did not plead. Rule 12(b)(6) requires assessment of the claims actually

alleged within the four corners of the operative Complaint. Defendant's Second Motion to Dismiss should be denied.

Respectfully submitted,

Date: August 9, 2026

/s/ _Gallit Fischman_

**GALLIT FISCHMAN, Pro Se**
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record through the Court's CM/ECF system, or by other means authorized by the Federal Rules of Civil Procedure, on August 9, 2026.

/s/ _Gallit Fischman_

GALLIT FISCHMAN, Pro Se