UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GALLIT FISCHMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | DOCKET NO: 1:26-cv-11504 |
| | ) | |
| BOSTON CHILDREN'S HOSPITAL, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**REPLY OF DEFENDANT TO PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS AMENDED COMPLAINT**

Defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital ("BCH") respectfully submits this brief Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint in order to correct misstatements in Plaintiff's Opposition and clarify BCH's position, which BCH believes will assist the Court in deciding its Motion.

**I.   THIS ACTION IS BARRED BY CLAIM-SPLITTING AMONG PLAINTIFF'S FOUR SEPARATE ACTIONS ARISING FROM THE SAME COMMON FACTS.**

The Court should dismiss Plaintiff's Complaint for failure to bring all claims arising from a common nucleus of operative facts - her father's death following treatment with everolimus at UTSWMC – in the same action.  Plaintiff has filed at least four actions against various defendants in different courts alleging claims arising from the Decedent's treatment and death at UTSWMC:

1) *Fischman, et al. v. University of Texas Southwestern Medical Center*,[1] Dallas County Cause No. DC-25-18350 (dismissed);

2) *Fischman v. Epic Systems Corporation*, Texas Northern District Court Cause 2026cv00770 (pending);

---

[1]   In the case against UTSWMC, Plaintiff alleged claims of "institutional negligence" and "institutional system failures" in the "deployment of a high-risk, off-label tangible product" against UTSWMC.  See Sixth Amended Pleading, attached as Exhibit "1."

3) *Fischman v. Novartis Pharmaceuticals Corporation*, Texas Northern District Court 2026cv01882 (pending);

4) *Fischman v. Boston Children's Hospital*, (present action).

In barring an action, the essential inquiry is whether "the causes of action arise out of a common nucleus of operative facts." *Salvati v. Fireman's Fund Insurance Complaint*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019); *Mass. Sch. of Law at Andover, Inc., v. Am. Bar. Ass'n,* 142 F.3d 26, 38 (1st Cir. 1998).   Here, all of these actions arise from a common nucleus of operative facts – the Decedent's death following treatment with everolimus at UTSWMC.  The factual grouping constitutes a single "transaction" as they are related in time, space, origin or motivation; form a convenient trial unit; and treating them as a unit conforms to the parties' expectations or business understanding or usage.  Restatement (Second) of Judgments § 24; see *In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001).  Parties are generally not permitted to bring new actions based on claims that could have been asserted in the earlier action, but were not.  *Salvati*, 368 F. Supp. 3d at 91. This doctrine protects litigants against gamesmanship and the added litigation costs of claim-splitting, and preventing scarce judicial resources from being squandered in unnecessary litigation. Id. at 92.  In light of other pending matters arising out of the same operative facts, this case should be dismissed.  *Mancuso v. Kinchla*, 60 Mass. App. Ct. 558, 571 (2004) (action barred where facts that underpin present claims arose from same nucleus of operative facts as those that were or could have been adjudicated in earlier suit).

**II.     FISCHMAN FAILS TO IDENTIFY ANY VIABLE LEGAL CLAIM OR AUTHORITY ESTABLISHING ANY DUTY OWED BY BCH.**

In her twenty-page Opposition, Plaintiff cites *not a single case* to support the existence of any duty owed by BCH to the Decedent.[2]  Plaintiff names BCH "solely on the ground that it accepted and exercised primary regulatory oversight" of BCH's Clinical Study, in which the Decedent was not enrolled and which had no connection to the medication prescribed to the Decedent. Opposition, p. 9.   She alleges that BCH failed to prevent the Clinical Study's "investigational framework from moving through the same institutional environment into routine care for non-enrolled patients."  Opposition, p. 6.  More specifically, Plaintiff seeks to impose a duty on BCH to monitor unaffiliated physicians at an unrelated institution thousands of miles away who may prescribe a medication outside of a clinical trial:

> the [study] framework moved from the controlled trial at UT Southwestern into its adult heart-transplant program and reached [the Decedent] without the trial's consent, eligibility requirements, monitoring, or safeguards.[3]

Opposition, p. 7.    Plaintiff's Opposition fails to identify <u>any case</u> or <u>any legal authority</u> establishing that BCH owed the Decedent any duty of care.

The SJC's decision in *Coombes v. Florio* is inapposite here.  In *Coombes*, the court addressed the duty of care of a physician to "everyone foreseeably put at risk by his failure to warn of the side effects *of his treatment of a patient*."  *Coombes v. Florio*, 450 Mass. 182, 190 (2007). The SJC explicitly limited the duty, stating "the duty described here does not impose a heavy

---

[2]     BCH notes that while claims that the Court is limited to facts alleged in the "operative" Amended Complaint, Plaintiff is bound statements made in pleadings filed in court, including her original Complaint.

[3]     As an initial matter, contrary to Plaintiff's claims that whether the TEAMMATE trial "moved through UT Southwestern" is a fact question, the lack of a legal duty owed by BCH in this case is a question of law properly resolved by BCH's motion to dismiss.  *Silvia v. Kohl's Inc., et al.*, 2026 WL 1552147 (D. Mass. 2026).

burden because *it requires nothing from a doctor that is not already required by his duty to his patient.*" *Coombes* at 191.  Even if a duty were owed by BCH to warn patients participating in the study at another institution about the medication (and no such duty was owed), *the Decedent was not a patient in the study*.  Furthermore, even if a duty were owed by BCH to warn physicians at another institution who participated in the study about the medication (and no such duty was owed), *the Decedent's physician was not participating in the study*.   There was no special relationship between BCH and the Decedent, or even his treating physician who independently prescribed everolimus to the Decedent, which would give rise to a duty.  See, e.g., *Coombes*, 450 Mass. at 194, citing *Kavanagh v. Trustees of Boston Univ.,* 440 Mass. 195, 202–203 (2003) (neither basketball coach nor university owed duty to player of opposing team because there was no special relationship between them).

Similarly, Plaintiff's reliance on *Mullins v. Pine Manor College*, 389 Mass. 47 (1983), is misplaced.  In *Mullins*, the SJC imposed a duty on colleges to protect *their resident students* against the criminal acts of third parties.  *Mullins*, 389 Mass. at 54; see *Roe No. 1 v. Children's Hospital Medical Center*, 469 Mass. 710, 717 (2014) (no duty of care owed by BCH to patients of former employee after he left BCH employ).  In *Roe No. 1*, the SJC declined to find that BCH undertook a duty to protect "unknowable future plaintiffs" from harm by former employees.  Id.  BCH is entitled to a dismissal of Plaintiff's claims against it.

4

### III. PLAINTIFF HAS FAILED TO ESTABLISH A "NEGLIGENT FAILURE TO WARN" CLAIM.

Even assuming that UTSWMC chose to rely on BCH's IRB's decision or documents in connection with UTSWMC's participation in the DOD's study[4], Plaintiff's failure to allege that the Decedent was treated as part of BCH's study, or even UTSWMC's study, is fatal to her claim. In her Opposition, Plaintiff alleges that BCH "failed to exercise reasonable care in communicating and containing the known risks that its own safety framework was designed to address." Opposition, p. 10.  Any such duty, to the extent it exists, runs only to participants in the trial. Similarly, Plaintiff's allegation that BCH knew that everolimus carried risks does not mean that BCH had a duty to warn the Plaintiff or his physicians (as she admits, see Opposition, p. 11). Plaintiff goes on to argue that BCH had a to duty to prevent physicians from learning about "trial-derived practices" and using them outside of the Clinical Study, and that such conduct supports a gross misconduct count.  Opposition, p. 11.  Plaintiff fails to cite one case or legal authority for the creation of such a duty.

Perhaps most telling, Plaintiff alleges that "[the influence of the study] was especially significant in the off-label setting, where the decision to use a drug *lies with the treating physician*. In that *discretionary environment*, research findings and the narratives surrounding them can directly shape clinical judgment and influence treatment beyond the study population."  Plaintiff acknowledges that decisions regarding the Decedent's treatment, which occurred wholly outside of BCH's Clinical Study, were independent medical treatment decisions unrelated to BCH's study. BCH is entitled to dismissal of Plaintiff's claims.

---

[4]    BCH denies that UTSWMC's allegation is binding on BCH or establishes any duty on owed by BCH.  BCH need not "refute" allegations in UTSWMC's letter – which do bind BCH – since the Decedent was not enrolled in the Clinical Study or otherwise a patient of BCH.

**IV.    BCH REQUESTS THAT THE COURT REQUIRE PLAINITFF TO DISCLOSE WHETHER DOCUMENTS FILED ARE AI-GENERATED OR PREPARED BY OR WITH THE ASSISTANCE OF COUNSEL.**

BCH requests that the Court require Plaintiff to disclose whether she employed the use of artificial intelligence in drafting this Opposition and further pleadings.  See *Souza v. City of Fitchburg*, 2026 U.S. Dist. LEXIS 67397 (D. Mass. Mar. 30, 2026); *Traver v. GM Fin. Co.*, No. 25-CV-11890-AK, 2026 WL 679527 (D. Mass. Mar. 11, 2026) (requiring plaintiff to certify filings are not hallucinated or falsely represented); *Etten v. Fattman*, 2026 U.S. Dist. LEXIS 46885 (D. Mass. Mar. 6, 2026).  BCH further requests that Plaintiff be ordered to disclose whether an attorney drafted the Amended Complaint and/or other papers.  See, e.g. *United States v. Robinson*, 227 F. Supp. 3d 141, 146 (D. Mass. 2016) (pro se petitioner's petition held to less stringent standards than formal pleadings drafted by lawyers); *Ellis v. State of Me.*, 448 F.2d. 1325 (1st. Cir.) ("If a brief is prepared in any substantial part by a member of the bar, it must be signed by him").

## Conclusion

For the foregoing reasons, Defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital respectfully moves pursuant to Fed. R. Civ. P. 12 that this Honorable Court *allow* its motion and enter an Order *dismissing* Plaintiff's Amended Complaint in its entirety.

Defendant,
The Children's Hospital Corporation
d/b/a Boston Children's Hospital,
By its attorneys,


*Patti Holloran Murphy*
Robert R. Hamel, Jr. BBO: #567194
rhamel@hmdrslaw.com
Patti Holloran Murphy, BBO: #564470
pmurphy@hmdrslaw.com
Hamel, Marcin, Dunn Reardon & Shea, PC
350 Lincoln Street, Suite 1101
Hingham, MA 02043
(617) 482-0007

Dated: August 9, 2026


## CERTIFICATE OF SERVICE

I, Patti Holloran Murphy, counsel for defendant, The Children's Hospital Corporation d/b/a Boston Children's Hospital hereby certify that this document was filed through the ECG system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by email to the following:

Gallit Fischman
10114 Deermont Trail
Dallas, TX 75243
(214) 893-6720
gallitfischman@yahoo.com
*Pro se Plaintiff*


*Patti Holloran Murphy*
Patti Holloran Murphy, Esq.
BBO: #564470

Dated: August 9, 2026

7