# EXHIBIT 1

FILED
2/9/2026 5:40 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Marissa Gomez DEPUTY

CAUSE NO. DC-25-18350

| | | |
|---|---|---|
| GALLIT FISCHMAN, Individually and and ILANA FISCHMAN, individually | § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, | § § | |
| *Defendant.* | § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' SIXTH AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW GALLIT FISCHMAN and ILANA FISCHMAN, individually ("Plaintiffs"), and file this Sixth Amended Petition against THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER ("Defendant" or "UT Southwestern"), pursuant to Texas Rules of Civil Procedure 62 and 65. This Petition supersedes all prior petitions.

**INSTITUTIONAL NEGLIGENCE CLAIMS: THRESHOLD CLASSIFICATIONS REQUESTED**

Defendant has centered its defense on threshold issues concerning sovereign immunity, Chapter 74 classification, and Standing/Capacity.

**Controlling Construction for Threshold Issues**

This section is intended to clarify Plaintiffs' positions as to TTCA waiver, Chapter 74 classification, and standing/capacity. To the extent any ambiguity appears elsewhere regarding these threshold issues, Plaintiffs respectfully submit that the statements in this section reflect the controlling articulation of Plaintiffs' theory.

**Threshold Determinations Requested**

Accordingly, Plaintiffs request that the Court determine the following threshold issues based on the four corners of this live pleading:

- **Sovereign Immunity Is Waived Under Texas Tort Claims Act § 101.021(2).** Dov Fischman's injuries and death were caused by Defendant's affirmative authorization, custody, dispensing pathway, and physical deployment of tangible personal property through Defendant's institutional system.

- **Claims are Outside Chapter 74.** The gravamen of this action is Defendant's institutional and operational negligence, including failures in the governance of authorization controls, monitoring, oversight, and record integrity. Plaintiffs' injuries bear a direct and substantial nexus to these institutional systems and arose from Defendant's administrative design and enforcement failures. The claims sound in general liability and ordinary negligence and fall outside Chapter 74.

- **Plaintiffs Have Standing and Capacity**. Plaintiffs sue solely in their individual capacities under CPRC Chapter 71. No survival claims are asserted. No estate has been opened or exists for Dov Fischman, and Plaintiffs seek no estate damages.

**Causes of Action Pleaded**

This Petition pleads only two causes of action:

(1) Wrongful Death under CPRC Chapter 71, asserted by both Plaintiffs in their individual capacities; and

(2) Institutional Negligence and Unauthorized Administration of Tangible Personal Property, asserted solely by Plaintiff Gallit Fischman.

**Relief Requested as to Threshold Issues**

Plaintiffs respectfully request that the Court classify these claims outside Chapter 74 for all purposes and recognize waiver of immunity under the Texas Tort Claims Act as pleaded. Plaintiffs further request that the Court decide these threshold issues on the pleadings or, if necessary, permit limited jurisdictional discovery of institutional policies and governance materials uniquely within Defendant's possession and control:

## I. DISCOVERY CONTROL PLAN

Plaintiffs intend that discovery be conducted under Discovery Level 2 pursuant to Texas Rule of Civil Procedure 190.3. Plaintiffs allege claims arising from institutional nondisclosure, unauthorized institutional use, and administrative system failures.

## II. PARTIES

Plaintiffs bring this action in their individual capacities pursuant to Texas Civil Practice and Remedies Code Chapter 71.

**Plaintiff Gallit Fischman** is an individual and resident of Dallas County, Texas, asserting claims for wrongful death and related institutional liability theories.

**Plaintiff Ilana Fischman** is an individual and resident of Dallas County, Texas, asserting wrongful-death damages only under Chapter 71.

**Marc Fischman** resides outside the United States, has been notified of this action, and is not joined as a plaintiff.

**Defendant The University of Texas Southwestern Medical Center** is a state institution and public hospital system with its principal place of business in Dallas County, Texas, and is liable

for its institutional acts and omissions and, under respondeat superior, for acts and omissions of its employees and agents acting within the scope of their institutional roles.

Plaintiffs reserve the right to join additional responsible persons or entities identified through discovery.

## III. SERVICE OF CITATION

Service of citation may be made upon Defendant in accordance with the Texas Rules of Civil Procedure.

## IV. JURISDICTION AND VENUE

### 4.1 Jurisdiction

Plaintiffs' claims arise from Defendant's institutional and administrative conduct, including governance, authorization systems, records control, monitoring and escalation frameworks, medication-control systems, and oversight structures. The alleged negligence originates from institutional disclosure, authorization, and administrative system failures. See Jared Bush, Jr. v. Columbia Med. Ctr. of Arlington Subsidiary, L.P., No. 23-0460, 2025 WL 230460 (Tex. May 23, 2025).

Sovereign immunity is waived under Texas Civil Practice and Remedies Code § 101.021(2) because Mr. Fischman's injuries and death were caused by Defendant's affirmative authorization, custody, dispensing pathway, and physical administration of tangible personal property through Defendant's institutional medication systems.

### 4.2 Venue

---

Venue is proper in Dallas County, Texas under Texas Civil Practice and Remedies Code § 15.002, since the acts and omissions giving rise to this claim occurred in Dallas County.

## V. PROCEDURAL BACKGROUND AND SCOPE OF LIABILITY

### 5.1 Controlling Institutional Liability Framework

For purposes of this Section, "institutional negligence," "institutional failures," and "institutional conduct" refer to Defendant's acts and omissions in the design, implementation, enforcement, and governance of its administrative systems, including authorization controls, disclosure mechanisms, monitoring and escalation frameworks, records integrity, and oversight structures, all of which arise from Defendant's institutional control and non-delegable administrative duties.

All subsequent factual allegations, causation allegations, and causes of action are pleaded and shall be construed consistently with this institutional liability framework.

### 5.2 Gravamen and Substantive Nexus of Liability

The gravamen of Plaintiffs' claims arises from Defendant's institutional system failures. Plaintiffs' injuries bear a direct and substantial nexus to those failures because the harm flowed from how Defendant's administrative systems were designed, implemented, and enforced. Liability turns on the functioning of Defendant's institutional processes and controls.

### 5.3 Institutional Governance and Administrative Control

UT Southwestern exercised institutional control over the authorization, disclosure, monitoring, recordkeeping, and oversight systems at issue through centralized administrative and governance functions, including transplant program administration, research administration, institutional review processes, quality and safety functions, risk management, and records and information

governance. These functions operated as components of a single institutional system responsible for authorization routing, disclosure enforcement, monitoring compliance, escalation, and record integrity.

**5.4 Centralized Institutional Control and Non-Delegable Duties**

Defendant exercised centralized control over these functions, which carried non-delegable responsibilities for authorization, documentation, continuity, oversight, accountability routing, and monitoring enforcement for high-risk institutional deployments. The failures alleged, including nondisclosure, lack of authorization, and breakdowns in record integrity and escalation controls, occurred at the institutional level before deployment and resulted from failures in Defendant's systems, policies, and enforcement mechanisms.

**5.5 Failure of Institutional Review and Escalation**

This action was filed after repeated efforts to obtain institutional review, coordinated intervention, and transparency failed. During Mr. Fischman's life, Defendant's systems reflected abnormal findings following the institutional deployment at issue, yet no centralized escalation, institutional review, or corrective response occurred. After his death, requests for explanation, review outcomes, and institutional materials were denied or unanswered. Subsequent production revealed material gaps in authorization routing, monitoring safeguards, and system enforcement.

**5.6 Pre-Suit Institutional and Governmental Review Efforts**

Prior to filing this action, Plaintiffs sought institutional review, escalation, and explanation through Defendant's administrative and risk-management channels regarding the deployment at issue, the resulting harm, and the absence of documented safeguards. Defendant failed to provide any institutional findings, corrective action, or explanation.

---

Plaintiffs further pursued non-judicial oversight through complaints and inquiries to appropriate governmental and regulatory bodies and sought institutional policies, authorization records, and governance materials through formal open-records requests. These efforts likewise failed to produce meaningful findings, corrective action, or complete records sufficient to explain Defendant's systems, controls, or decisions.

Litigation was initiated only after these institutional, regulatory, and public-records mechanisms failed to produce accountability, transparency, or a documented explanation.

**5.7 Universal Organizational Duty to Maintain Functional Systems**

The administrative processes at issue, including authorization controls, monitoring frameworks, escalation pathways, records integrity, and risk dissemination, constitute baseline operational requirements imposed on any organization that centrally authorizes and deploys high-risk, off-label tangible products.

Defendant operated a fragmented, multi-unit institutional structure that distributed these functions across multiple systems, thereby requiring defined processes, data controls, and institutional safeguards capable of identifying causation when deterioration followed deployment.

Defendant failed to implement or enforce these universal mechanisms. Warning indicators were fragmented across systems, not escalated for institutional review, and addressed only as isolated manifestations rather than through required causation analysis.

These baseline duties apply equally to public institutions, and governmental status does not diminish responsibility for maintaining systems necessary to prevent foreseeable injury or death.

## VI. FACTUAL BASIS FOR CLAIMS

This action arises, as defined and governed by the institutional liability framework set forth in Section V, from the failure of Defendant's institutional authorization, documentation, monitoring, and oversight systems governing the deployment of a high-risk, off-label tangible product. After years of stability under Defendant's institutional safeguards, a material administrative change authorized deployment of the product through Defendant's institutional systems without enforceable authorization controls or system-level gating, resulting in injury and death. Plaintiffs' claims sound in ordinary negligence and wrongful death based on institutional system failure and the affirmative use of tangible personal property under the Texas Tort Claims Act, as further detailed below.

### 6.1 Institutional Control and Governance

At all relevant times, UT Southwestern operated as a centralized administrative entity exercising exclusive control over authorization systems, records governance, procurement and custody of tangible personal property, dispensing pathways, monitoring frameworks, escalation infrastructure, and institutional reporting. Defendant controlled the systems necessary to identify risk, assess deterioration, determine causation, and intervene.

Defendant's administrative oversight units, including research administration, records and information governance, risk management, quality and safety functions, and program administration, owed institutional duties to ensure enforceable authorization, complete documentation, monitoring, and escalation. Their collective failure reflects breakdowns in institutional governance.

### 6.2 Established Baseline and Institutional Deviation

For nearly a decade, Mr. Fischman remained stable under Defendant's enforced institutional safeguards, including consistent documentation, monitoring protocols, escalation pathways, and continuity of critical information. This stability demonstrates Defendant's ability to operate effective institutional controls when enforced.

Before the medication transition, Defendant weakened or ceased enforcing these safeguards across its systems. Authorization, documentation, monitoring, and accountability controls were no longer consistently applied, materially altering how risk was governed at the institutional level.

### 6.3 Collapse of Authorization, Records, and Oversight

Defendant authorized, procured, and deployed a high-risk, off-label tangible product through its systems without enforceable approvals, standardized authorization routing, auditable records, or a defined monitoring infrastructure. Institutional records were incomplete, non-linear, and internally inconsistent, preventing determination of active regimens, timing of changes, or compliance with safeguards.

By controlling procurement, custody, and dispensing pathway of tangible personal property, including through a Patient Assistance Program without documented authorization, Defendant assumed responsibility for safety governance while lacking records sufficient to verify compliance, traceability, or risk status.

### 6.4 Failure to Monitor, Escalate, and Intervene

Defendant implemented no institutional monitoring cadence or escalation framework before authorizing deployment of the product. As adverse effects accumulated, warning signals were

fragmented across systems and addressed in isolation rather than integrated and escalated for institutional review.

Defendant failed to restore safeguards or initiate coordinated intervention. The product was discontinued only after irreversible injury occurred.

## 6.5 Research-Driven Administrative Failures

At the time of the transition, Defendant was engaged in institutional research activity involving the same off-label product. Defendant failed to maintain operational separation between research administration and patient-specific authorization, documentation, monitoring, and safety governance.

Institutional systems deferred to research-oriented priorities without mechanisms requiring patient-specific safeguards to control authorization, monitoring, or escalation.

## 6.6 Institutional Causation and Failure to Determine Root Cause

Defendant operated a fragmented, multi-unit institutional care structure in which authorization, monitoring, documentation, escalation, and review functions were distributed across multiple systems. Under such a model, Defendant was required to maintain defined institutional processes, data controls, education, and escalation pathways capable of identifying causation when deterioration occurred.

Defendant failed to do so. No integrated causation analysis or corrective care plan was implemented. Instead, abnormal findings were addressed as isolated symptoms while continued exposure to the underlying source of harm was permitted.

Mr. Fischman was stable prior to the transition. His deterioration began only after the product was authorized and deployed through Defendant's institutional systems and progressed during continued exposure. The adverse effects that developed were consistent with known risks associated with the product, including risks identified in its Black Box Warning.

Defendant failed to operationalize those known risks across its institutional systems. Warning indicators were fragmented, not integrated, and not escalated for institutional causation analysis. Defendant's failure to preserve record integrity, enforce monitoring, integrate warning signals, and determine causation resulted from institutional design and enforcement failures.

Where an identifiable agent of change is introduced into a previously stable system and adverse effects consistent with known risks follow within weeks, the agent of change is the most probable cause. Defendant cannot exclude the product as the cause of harm because it failed to maintain systems capable of evaluating causation.

But for Defendant's failures in institutional authorization, documentation, monitoring, escalation, and oversight, Mr. Fischman would not have suffered the injuries that led to his death.

**6.7 Proximate Cause**

The harm was a foreseeable result of authorizing and continuing a high-risk, off-label tangible product without institutional safeguards, monitoring requirements, or escalation pathways. No independent or superseding cause intervened. Defendant's failures operated continuously from authorization through death, resulting in an unbroken chain of harm.

## VII. CAUSES OF ACTION

This action arises from UT Southwestern's institutional nondisclosure, lack of institutional authorization, and administrative failures in implementing a high-risk, off-label medication transition. Plaintiffs challenge the creation and execution of an institution-wide administrative practice that displaced established safeguards without legally sufficient institutional disclosure, authorization, oversight, or enforcement. The gravamen of these claims is institutional conduct.

**7.1 Wrongful Death (CPRC Chapter 71)**

Plaintiffs Gallit Fischman and Ilana Fischman bring this wrongful-death action in their individual capacities pursuant to Texas Civil Practice and Remedies Code Chapter 71.

Mr. Fischman's death was caused by UT Southwestern's wrongful acts and omissions, including institutional nondisclosure, uninformed institutional authorization of a medication transition, failure to enforce required administrative safeguards, and the affirmative use of tangible personal property through Defendant's institutional systems. As a direct and proximate result, Plaintiffs suffered damages recoverable under Chapter 71, including pecuniary loss, loss of companionship and society, and mental anguish.

**7.2 Uninformed and Unauthorized Institutional Administration**

UT Southwestern created and controlled the institutional disclosure and authorization framework governing high-risk, off-label medication transitions, including standardized forms, required disclosure procedures, and the data systems used to authorize and execute medication deployment. As the institutional owner of that framework, UT Southwestern was responsible for defining required disclosures, ensuring written and verbal disclosures were provided, obtaining executed authorizations, monitoring compliance, and enforcing consequences for noncompliance.

UT Southwestern further controlled the electronic and administrative systems through which medication orders were authorized and executed. Those systems should not have permitted the medication to be authorized, released, or deployed unless a completed disclosure and authorization document was uploaded, validated, and linked within the system. Defendant failed to implement or enforce such controls.

UT Southwestern breached these duties by authorizing and executing a medication transition without informed institutional disclosure, without legally sufficient institutional authorization, and without meaningful monitoring, enforcement, or system-level gating. As a result, the medication was deployed through Defendant's institutional systems in an uninformed and unauthorized manner.

These failures were a proximate cause of Mr. Fischman's injuries and death and establish liability for uninformed and unauthorized institutional administration of tangible personal property.

**7.3 Waiver of Immunity Under the Texas Tort Claims Act**

UT Southwestern is a governmental unit within the meaning of the Texas Tort Claims Act. Mr. Fischman's injuries and death were proximately caused by UT Southwestern's affirmative authorization, custody, dispensing pathway, and physical administration of tangible personal property through Defendant's institutional medication systems.

UT Southwestern exercised exclusive physical control over the acquisition, custody, dispensing pathway, and institutional deployment of the medication, including distribution through a Patient Assistance Program. The medication was authorized, procured, dispensed, and physically introduced into Mr. Fischman's body through UT Southwestern's institutional systems. This

conduct constitutes affirmative use and institutional administration of tangible personal property under Texas Civil Practice and Remedies Code § 101.021(2). Sovereign immunity is therefore waived.

**7.4 Fair Notice**

Taken as a whole, these allegations provide UT Southwestern with fair notice of the factual basis of Plaintiffs' claims and the institutional acts and omissions at issue. Plaintiffs assert two causes of action only: wrongful death under CPRC Chapter 71 and Institutional Negligence and Unauthorized Administration of Tangible Personal Property.

**VIII. DAMAGES**

As a direct and proximate result of Defendant's acts and omissions, Plaintiff Gallit Fischman seeks all damages recoverable under Texas law for the claims asserted herein, and Plaintiffs Gallit Fischman and Ilana Fischman seek wrongful death damages as set forth below. All damages are sought solely based on UT Southwestern's institutional governance, administrative systems, and corporate program oversight.

# 8.1 Rule 47(c) Damages Range

Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiffs seek monetary relief of more than $1,000,000 but not more than $5,000,000.

# 8.2 Wrongful Death Damages

Plaintiffs Gallit Fischman and Ilana Fischman seek wrongful death damages under Texas Civil Practice and Remedies Code Chapter 71, including:

---

- pecuniary losses, including loss of financial support, services, care, assistance, and contributions Dov Fischman would have provided to Plaintiffs;

- loss of companionship and society, including love, affection, comfort, guidance, and support;

- mental anguish suffered as a result of Dov Fischman's death; and

- loss of financial benefits and contributions Plaintiffs would reasonably have received.

## IX. REQUEST FOR DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendant disclose, within the time prescribed by the Texas Rules of Civil Procedure, the information and materials described in Rule 194.2.

## X. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable and tender the required jury fee.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs recover judgment against Defendant for:

- **Threshold Relief.** An order determining, based on the four corners of this live Petition (and any permitted limited jurisdictional discovery), that:

  o sovereign immunity is waived under Texas Civil Practice and Remedies Code § 101.021(2);

- the claims pleaded herein are not health care liability claims under Chapter 74; and

- Plaintiffs have standing and capacity to assert the claims pleaded herein.

- all damages described in this Petition to the maximum extent permitted by law, including wrongful death damages;

- pre-judgment and post-judgment interest at the maximum rate allowed by law;

- costs of court;

- denying Defendant any attorney's fees, sanctions, or fee-shifting relief to the extent permitted by law;

- prospective declaratory and injunctive relief ancillary to Plaintiffs' Texas Tort Claims Act claims, limited to requiring Defendant to comply with existing statutory, regulatory, and internal administrative requirements governing institutional disclosure, authorization, record integrity, and monitoring and escalation systems for high-risk, off-label medication administration;

- such equitable relief as necessary to remedy and prevent continued institutional nondisclosure and administrative process failures alleged herein; and

- such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

Date: February 9, 2026

/s/ _Gallit Fischman_

GALLIT FISCHMAN, Pro Se

---

Individually and as a Plaintiff
10114 Deermont Trail
Dallas, TX 75243
Phone: (214) 893-6720
Email: gallitfischman@yahoo.com



/s/ _____

ILANA FISCHMAN, Pro Se

Individually and as a Plaintiff
10114 Deermont Trail
Dallas, TX 75243
Phone: (972) 679-3606
Email: designsetc1@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2026, a true and correct copy of the foregoing instrument was served on all counsel of record in accordance with Texas Rules of Civil Procedure 21 and 21a by electronic service through the electronic filing manager at the electronic mail address on file.

Via e-Service

**Jason Warner**
Special Litigation Counsel
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
jason.warner@oag.texas.gov
Counsel for Defendant



/s/ _____

**GALLIT FISCHMAN**

Pro Se Plaintiff

---

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 111044404
Filing Code Description: Amended Petition
Filing Description: 6TH
Status as of 2/10/2026 8:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Matthew JasonWarner | | jason.warner@oag.texas.gov | 2/9/2026 5:40:39 PM | SENT |
| Gallit Fischman | | gallitfischman@yahoo.com | 2/9/2026 5:40:39 PM | SENT |
| Ilana Fischman | | designsetc1@yahoo.com | 2/9/2026 5:40:39 PM | SENT |